DOROTHY VASTOLA, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2247–84.     Filed May 21, 1985.

*William J. Werner* and *Richard L. Gold*, for the petitioner.
*Francis J. Strapp, Jr.*, for the respondent.

OPINION

TANNENWALD, *Judge*: Respondent determined deficiencies in petitioner's Federal income taxes for taxable years 1977 and 1978 of $83,164.63 and $27,267.85, respectively. The case is before this Court on respondent's motion for partial summary judgment under Rule 121[1] on the issue of whether petitioner may deduct her claimed losses for the years in issue to the extent they resulted from alleged advanced minimum royalty payments.

At the time she filed her petition in this case, petitioner resided in Colts Neck, New Jersey. Petitioner filed Federal

---

[1]All Rule references are to the Rules of Practice and Procedure of this Court, and, unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

income tax returns, on which she elected the accrual method of tax accounting, for 1977 and 1978.

In her objection to respondent's motion, petitioner claims the following:[2] The Grand Coal Venture (GCV), a partnership electing under section 761(a)(2) to be excluded from the provisions of subchapter K, was formed during 1977 for the purpose of developing and mining certain coal-bearing property. Petitioner, based in large part upon a preliminary geologist's report attached to the GCV offering memorandum that estimated "probable minimum reserves" of 30-million tons of lignitic coal at a depth of less than 200 feet, decided to invest in GCV. On December 31, 1977, she executed a sublease agreement with Ground Production Corp. (the lessee of the property and petitioner's sublessor) for the right to mine coal, a subscription agreement with GCV for 7.2 units, a nonrecourse note in favor of Ground Production Corp., and a security agreement for the note. In relevant part, the sublease agreement provided as follows:

Subject to the terms, provisions and conditions hereof and of the Lease, the Sublessor does hereby sublet unto the Sublessee the Percentage Interest in all of the coal contained in, on and underlying the tracts of land * * *, and the mining rights and privileges appurtenant thereto * * * for a period of [8] years[3] from the date hereof, provided however that the term of this Lease may be extended from year to year at the option of the Sublessee * * * until the Sublessee shall have mined and removed all merchantable coal from the Property.

* * * * * * *

Sublessee agrees that for each twelve month period during the term hereof (the "term" being the initial year period plus all extensions), but not to exceed a total of 20 years (although this Sublease may be further extended) commencing with the date hereof and ending one year thereafter (each such twelve month period is hereinafter referred to as a "term year"), it will pay to Sublessor a non-refundable minimum annual royalty of $40,000 (FORTY THOUSAND DOLLARS) (the "Minimum Annual Royalty") payable as hereinafter provided. * * *

At the closing the Sublessor requires payment of the Minimum Annual Royalty for the first year of the term of the Sublease in the amount of

---

[2]We note that we view the facts and inferences to be drawn therefrom in the light most favorable to the party opposing the motion for summary judgment, i.e., petitioner. *Wright v. Commissioner*, 84 T.C. 636, 638 (1985). Moreover, respondent assumes, for purposes of his motion, that the transactions took place as described in the documents.

[3]We note that the copies of the sublease agreement submitted by each party as exhibits leave the number of years blank. However, the offering memorandum mentions 8-year subleases, and respondent, in the memorandum of law in support of his motion, characterizes the sublease as an "8 year lease."

$40,000.00 per Unit ($10,000.00 in cash and $30,000.00 by non-recourse Note per Unit) and in addition $10,000.00 per Unit (toward the second year's Minimum Annual Royalty) by the Sublessee's delivering his Recourse Promissory Note * * *

On or before December 31, 1978, the Sublessee shall execute and deliver his Non-Recourse Note for $30,000.00 per Unit and on or before December 31, 1979, and each year thereafter the Sublessee shall execute and deliver his Non-Recourse Promissory Note for $40,000.00 per Unit.

The Non-Recourse Promissory Notes will bear interest at the rate of 10% per annum or the maximum legal contract rate of interest, whichever is less, and shall be due and payable on December 31, 1997. The Promissory Notes will require payments of $2.00 per ton of coal mined, removed, shipped and sold to be applied first toward payment of accrued interest and the balance in reduction of principal.

\* \* \* \* \* \* \*

Sublessor shall look solely to the security interest given by Sublessee to Sublessor in certain property and assets of the Sublessee, for the payment of the Minimum Annual Royalty Note [nonrecourse] * * * In no event shall the Sublessee be personally liable for the payment of the * * * Note * * * and in the event of any default hereunder or under the * * * Note no deficiency or other personal judgment will be rendered or entered against the Sublessee with respect to the obligations evidenced hereby or by the * * * Note.

The nonrecourse promissory notes executed by or for petitioner in 1977 and 1978 required monthly payments of $2 per ton of coal mined, removed, and shipped from the property, "provided, however, that in the event such monthly installments have not theretofore been sufficient to pay this Note in full, the unpaid principal balance of this Note and all unpaid and accrued interest shall be due and payable on December 1, 1997."[4] The notes each also provided that—

The holder of this Note shall look solely to the property and assets covered by the Security Agreement for the payment of this Note and the performance of the Participant's obligations hereunder and in no event shall the Participant be personally liable for the payment of the Note or the performance of the obligations hereunder. In the event of any default hereunder, no deficiency or other personal judgment shall be rendered or entered against the Participant with respect to the obligations evidenced by this Note.

---

[4]There is no explanation given for the discrepancy in the due dates between the notes and the sublease agreement. The discrepancy is immaterial insofar as concerns our decision herein.

The security agreement grants to Ground Production Corp. a security interest in all coal lying under the property, petitioner's interest in all personal property thereon, and all accounts receivable, contract rights, and general intangible rights to the payment of money for coal, goods, and services that may become due to petitioner as a result of the mining, processing, and sale of coal from the property. A security interest in the proceeds from all of the above property was also given.

Petitioner paid $78,000 cash and executed a nonrecourse note for $216,000 (i.e., $30,000 × 7.2 units) in 1977, and executed a recourse note for $78,000 and a nonrecourse note for $216,000 in 1978.[5] No mineral product was produced or sold by petitioner or GCV during the years in issue.

Section 1.612–3(b)(3), Income Tax Regs., sets forth the rules for deductibility of advanced royalties. Generally, advanced royalty payments are deductible only in "the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold." Sec. 1.612–3(b)(3), Income Tax Regs. When the advanced royalty is paid or accrued "as a result of a minimum royalty provision,"[6] however, the rule is different—

*in the case of advanced mineral royalties paid or accrued* in connection with mineral property *as a result of a minimum royalty provision,* the payor, at his option, may instead *treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued.* See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. For purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease. * * * The provisions of this subparagraph do not allow as deductions from gross income amounts disallowed as deductions under other provisions of the Code, such as section 461 (relating to general rule for

---

[5]We note that petitioner would appear to be obligated under the sublease agreement only to pay $72,000 cash in 1977 and to execute a $72,000 recourse note in 1978 (i.e., $10,000 × 7.2 units). Petitioner's moving papers allege, in a footnote, that the note should have been in the amount of $210,000, and that, in any event, petitioner claimed only $288,000, and not the full $294,000 "paid," as a deductible royalty expense in each of the years in issue.

[6]For a discussion of the economics of minimum royalty provisions, see *Wing v. Commissioner,* 81 T.C. 17, 38 n. 30 (1983).

taxable year of deduction) * * * [Sec. 1.612–3(b)(3), Income Tax Regs.; emphasis added.]

Initially, petitioner argues that, irrespective of the impact of section 1.612–3(b)(3), Income Tax Regs., *supra*, there is a question of fact that the Court must resolve, namely, the value of the coal sublease securing payment of the nonrecourse notes. Petitioner's contention was considered and rejected in *Wing v. Commissioner*, 81 T.C. 17, 40–41 (1983), wherein we specifically ruled that the fact that the securing property might have had sufficient value to assure the ultimate payment of nonrecourse promissory notes was irrelevant to the determination of the applicability of the aforementioned regulation. See also *Maddrix v. Commissioner*, 83 T.C. 613, 623 (1984), on appeal (11th Cir., Mar. 12, 1985). We continue to adhere to that position.

Petitioner next contends that the requirement under the sublease agreement that nonrecourse notes be executed in the amounts of $30,000 per unit for the first 2 years and $40,000 per unit per year thereafter for the remainder of the sublease term satisfies the regulation, in that the royalty provision requires yearly accruals of royalties. Respondent argues that because the nonrecourse notes are payable solely out of the proceeds of coal production, the sublease agreement does not *require* a substantially uniform annual royalty, and thus does not contain a "minimum royalty provision," within the meaning of the regulation. Thus, respondent argues that, as a matter of law, petitioner may deduct royalties only to the extent that coal was sold during the years in issue. For the reasons hereinafter stated, we agree with respondent.

The interpretation of section 1.612–3(b)(3), Income Tax Regs., *supra*, has been before this Court on two recent occasions. In *Wing v. Commissioner, supra*, after upholding the validity of the regulation, we held that an agreement providing for "an advance minimum Annual Royalty of $60,000 ($6,000 for each of the first ten years of the sublease)" to be "paid with $10,000 cash upon execution of this sublease and the delivery of the Lessee's nonrecourse promissory note of $50,000" did not contain a minimum royalty provision, within the meaning of section 1.612–3(b)(3), Income Tax Regs., *supra*. We reasoned that the agreement did not *require* annual payments over the lease period, as periodic payments under

the note were contingent upon the production of coal, and the only payments actually required, if indeed there were any, were *eventual* payments. *Wing v. Commissioner, supra* at 40. The "clear meaning of the regulation," we noted, "is to allow current deductions for advance minimum royalties that are required to be paid regardless of production." *Wing v. Commissioner, supra* at 41–42.

More recently, in *Maddrix v. Commissioner, supra*, a case strikingly similar to the instant case, we held that "The contingent nature of the note is inherently inconsistent with the regulatory definition of a minimum royalty provision." 83 T.C. at 623. In *Maddrix*, the sublease agreement provided for an "annual minimum royalty" in the amount of $300,000 for each year of the 10-year sublease period, $590,000 to be paid in cash at execution together with an aggregate of $1,950,000 in nonrecourse notes, bearing interest at 6 percent per annum, and payable in equal quarterly installments of $81,196. Despite the stated quarterly payment schedule, the terms of the notes and of the sublease agreement, along with the offering memoranda, provided that the notes were payable out of coal sale proceeds, that the notes were nonrecourse, and that the holder's sole remedy in the event of default was to proceed against the taxpayer's interest in the venture. Further, the sublease had a initial term of 10 years, and the taxpayer's nonrecourse note came due in some 7¾ years. Noting that our opinion in *Wing* stands for the proposition that eventual payment does not establish the existence of an annual *requirement* of payment, we held as a matter of law, *on respondent's motion for partial summary judgment*, that the taxpayer's nonrecourse note, on which payments were contingent on production, represented an obligation so illusory as not to evince "an enforceable *requirement* that substantially uniform minimum royalties be paid annually in any event, regardless of annual production." *Maddrix v. Commissioner, supra* at 623; emphasis in original.

In the instant case, petitioner is obligated annually to "pay to Sublessor a non-refundable minimum annual royalty of $40,000" per unit, "payable as hereinafter provided," until the earlier of the termination date of the sublease and December 31, 1997. However, as in *Wing* and *Maddrix*, the substance of the entire transaction undoes what appears at first glance to

be a uniform annual requirement. According to the documents, petitioner's "payments" are for the most part to consist of nonrecourse notes, which are payable in monthly amounts calculated per ton of coal shipped; the note balances not paid in this way come due on December 1, 1997—some 20 years after the date of execution of the notes in question. In the event of default, the holder's sole recourse is against the securing property, i.e., petitioner's interest in the coal and its proceeds. The sublease agreement runs through 1985, but is renewable, if petitioner so chooses, from year to year until all the merchantable coal is removed.

Petitioner contends that *Wing v. Commissioner, supra,* is distinguishable on two grounds, arguing that the royalty provision in *Wing* did not require the execution of separate, annual promissory notes and that the primary lease term in *Wing* expired before the single note came due. We disagree, and find *Wing* (and *Maddrix* as well)[7] materially indistinguishable from the instant case. While petitioner herein was required under the provision to execute a separate nonrecourse note in each of the years in issue, this difference does not provide a valid basis for distinguishing *Wing* and *Maddrix.* In substance, the payment schedule on the notes in all three cases was the same—periodic payments as coal was shipped, and eventual payment of the balance; none of the royalty provisions *required* that a substantially uniform amount of royalties be paid at least annually. Petitioner's argument concerning the sublease term is that because the term of the sublease interest securing the notes in the instant case extends beyond the due date of the notes in issue, the notes herein are not illusory. While the lease term in *Wing* indeed expired before the note came due, this fact was not the basis of our decision therein. See 81 T.C. at 39 n. 32. Moreover, despite the fact that the note in *Maddrix* was payable *before* the end of the sublease term, we found the note illusory as a matter of law for purposes of the regulation. In short, a nonrecourse note on which the only periodic payments are contingent on production is, under the interpretation of section 1.612–3(b)(3),

[7]Neither party brought *Maddrix v. Commissioner,* 83 T.C. 613 (1984), on appeal (11th Cir., Mar. 12, 1985), to the Court's attention, although the opinion was published on Oct. 22, 1984, respondent's motion was not filed until Dec. 20, 1984, and petitioner's response to said motion was filed on Feb. 14, 1985.

Income Tax Regs., *supra*, in *Wing* and *Maddrix*, too illusory to satisfy the provision in the regulation that the agreement of the parties *require* annual uniform payments over the life of the lease, and this result is irrespective of the fact that, with or without renewals,[8] the securing lease interest will still be in effect when the notes eventually become due.

However, petitioner raises a legal issue not discussed in *Wing* or *Maddrix*, i.e., that the express, repeated reference in section 1.612–3(b)(3), Income Tax Regs., *supra*, to "royalties paid or accrued" does not permit an interpretation requiring actual, annual payments by accrual-method taxpayers such as petitioner. According to petitioner, in order to decide whether the nonrecourse notes justified proper *accruals* of royalty obligations during the years in issue, we must hold a trial on the question of the value of the underlying coal sublease given as collateral for the notes, and thus deny respondent's motion.

On one hand, the language of the regulation allows a deduction for advanced royalties *paid or accrued* as a result of a minimum royalty provision "in the year in which the royalties were *paid or accrued*"; on the other hand, it defines a minimum royalty provision as one that "requires that a substantially uniform amount of royalties *be paid* at least annually." Sec. 1.612–3(b)(3), Income Tax Regs., *supra*; emphasis added. A strong argument can be made that the "be paid at least annually" language must, in order not to render the "paid or accrued" language mere surplusage, be interpreted to include a royalty provision that requires an *accrual* of royalty obligations at least annually. See Falik, "When Will Minimum Annual Royalties Be Deductible by Accrual-method Taxpayers?" 61 J. Tax. 42, 44–46 (1984); see also Rev. Rul. 77–489, 1977–2 C.B. 177, and Rev. Rul. 80–70, 1980–1 C.B. 104 (involving recourse obligations). However, we need not deal with this argument in the instant case, because, under the rules of section 461, to which section 1.612–3(b)(3), Income Tax Regs., *supra*, is expressly subject, petitioner may not properly accrue the liability under the notes in question during the years in issue.

---

[8]Petitioner treats the sublease term as extending for 20 years from Dec. 31, 1977, on the basis that the initial 8-year term could, at her option, be extended until Dec. 31, 1997. Assuming, but not deciding, that petitioner's treatment is correct, it can do no more than to put her in the same position with regard to the sublease term as the taxpayer in *Maddrix v. Commissioner, supra*.

Section 461(a) provides that the taxpayer's method of tax accounting determines the taxable year for which deductions are proper. Under section 446(c)(2), accrual is a proper tax accounting method. It is well established that the proper year of deduction for an accrual-method taxpayer is "the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Sec. 1.461–1(a)(2), Income Tax Regs.; see *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 543 (1979); *Burlington Northern Railroad Co. v. Commissioner* 82 T.C. 143, 146–147 (1984); see also Pub. L. 98–369, sec. 91(a), 98 Stat. 598–600 (1984) (adding Code section 461(h)(4), effective as to deductions allowable after July 18, 1984). It is also well established that contingent liabilities may not be accrued and deducted while they are still contingent. *Security Flour Mills Co. v. Commissioner*, 321 U.S. 281, 284 (1944); *Bennett Paper Corp. v. Commissioner*, 78 T.C. 458, 470 (1982), affd. 699 F.2d 450 (8th Cir. 1983).

Just as nonrecourse notes upon which payment is wholly contingent on production are so illusory as to be "inherently inconsistent with the regulatory definition of a minimum royalty provision" (*Maddrix v. Commissioner, supra* at 623), such notes are also so illusory as to fail to establish all the events necessary to determine the fact of liability. *Brountas v. Commissioner*, 692 F.2d 152, 161 (1st Cir. 1982), and *CRC Corp. v. Commissioner*, 693 F.2d 281, 283 (3d Cir. 1982), vacating and remanding on other grounds[9] 73 T.C. 491 (1979); *Gibson Products Co. v. United States*, 637 F.2d 1041, 1047-1049 (5th Cir. 1981). In the words of the Court of Appeals for the Fifth Circuit, a "true lending transaction," and thus a true liability, requires " 'a reasonable basis for the prediction that the ability of the borrower to repay will not be wholly or substantially contingent upon the success or failure of the business venture.' " *Gibson Products Co. v. United States, supra* at 1047; citation omitted.

In the instant case, the facts put forth by petitioner reveal that repayment of the notes in question is, at least until December 1, 1997, wholly contingent on production. Thus,

---

[9]For an explanation of the relationship between the First and Third Circuits' holdings on the accrual issue and this Court's opinion in *Brountas v. Commissioner*, 73 T.C. 491 (1979), see *Saviano v. Commissioner*, 80 T.C. 955, 963 n. 9 (1983).

petitioner's only possible argument, under the broad interpretation of section 1.612–3(b)(3), Income Tax Regs., *supra*, discussed above, is that because the value of the securing coal sublease will, on December 1, 1997, be sufficient to assure that petitioner will repay the note obligations, the notes are not *wholly* contingent and all the events necessary to establish the fact of liability occurred upon execution of each of the notes in question. According to this line of argument, petitioner should at least be given the opportunity at trial to prove the present and eventual values of the coal sublease. We disagree.

While there may be situations in which taxpayers may properly accrue liabilities under nonrecourse notes (a question we need not address), the instant case is not one of those situations. The property securing petitioner's notes was nothing more than the right to mine coal from the subject land for a limited period of time, and the right to any proceeds therefrom. Unlike other types of property, this property by definition had absolutely no value apart from the anticipated stream of income from the production of coal. Thus, the value of the property securing eventual payment of the notes was no less contingent on production than was the periodic payment obligation. Consequently, petitioner's nonrecourse note obligations were *wholly* contingent on production. See *Brountas v. Commissioner, supra* at 161–162; cf. *Estate of Baron v. Commissioner*, 83 T.C. 542, 550–552 (1984), on appeal (2d Cir., Mar. 26, 1985). Under these circumstances, expert testimony estimating the present and/or eventual values of the coal sublease would serve no purpose. The prospect of repayment of the notes in question in 1997, particularly in light of the fact that there was no production in 1977 and 1978, is simply too speculative and contingent to justify accrual of the liabilities, irrespective of the present or possible future value of the sublease. See *Brountas v. Commissioner, supra* at 161–162; *Gibson Products Co. v. United States, supra* at 1047–1049; *CRC Corp. v. Commissioner, supra* at 283.[10]

---

[10]We note that this conclusion is further supported by the cases denying the inclusion of contingent nonrecourse liabilities in the cost basis of property acquired. See, e.g., *Brountas v. Commissioner*, 692 F.2d 152, 157–158 (1st Cir. 1982), vacating and remanding on other grounds 73 T.C. 491 (1979); *Denver & Rio Grande Western R.R. Co. v. United States*, 205 Ct. Cl. 597, 505 F.2d 1266 (1974); *Estate of Baron v. Commissioner*, 83 T.C. 542, 549–553 (1984), on appeal (2d Cir., Mar. 26, 1985). A taxpayer claiming a current deduction has no better claim than one seeking an increased cost basis.

We hold, as a matter of law, that all the events necessary to establish liability on the notes in question did not occur during the years in issue, and that accruals of the royalty obligations would therefore be improper. See ABKCO Industries, Inc. v. Commissioner, 482 F.2d 150, 154 (3d Cir. 1973). Under such circumstances, and absent any indication by petitioner that there are any other disputed facts, summary adjudication is appropriate. See *Gauntt v. Commissioner*, 82 T.C. 96, 105 (1984), on appeal (9th Cir., Dec. 10, 1984); cf. *Maddrix v. Commissioner, supra*; *Graf v. Commissioner*, 80 T.C. 944 (1983); *Saviano v. Commissioner*, 80 T.C. 955 (1983).

Thus, even if the definition of "minimum royalty provision" under section 1.612–3(b)(3), Income Tax Regs., *supra*, were to be interpreted to include royalty provisions requiring the execution of promissory notes for which annual accruals of liability would be proper, the royalty provision in the instant case would not be a minimum royalty provision. Regardless of the value of the underlying coal sublease, then, petitioner's deductions under the royalty provision were improper, and respondent's motion must be granted.

*An appropriate order will be entered.*

"The only difference lies in the nature of the expense, generally speaking, whether the expense creates an asset with a useful life greater than 1 year. Thus, those cases which do not recognize a note or an obligation for purposes of computing the basis of an asset are equally applicable when the taxpayer is claiming a current expense. An expenditure funded with the proceeds of a contingent obligation represents neither a payment by, or cost to, a taxpayer for tax purposes. [*Graf v. Commissioner*, 80 T.C. 944, 949 (1983); fn. ref. omitted.]"

We reject petitioner's argument that the Supreme Court's opinion in *Commissioner v. Tufts*, 461 U.S. 300 (1983), requires recognition of nonrecourse debt for purposes of accrual. The Court's holding in *Tufts* that a transfer of property encumbered by a nonrecourse liability results in realization of income to the extent of the liability does not require that nonrecourse debt not be considered illusory in other contexts. See *Odend'hal v. Commissioner*, 748 F.2d 908, 913 (4th Cir. 1984), affg. 80 T.C. 588 (1983); *Graf v. Commissioner, supra* at 952–953. The *Tufts* case does not alter our analysis regarding accrual of liabilities in the instant case.