JACK BROWN AND CLARA BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 34462-83.
United States Tax Court
T.C. Memo 1985-564; 1985 Tax Ct. Memo LEXIS 68; 50 T.C.M. (CCH) 1418; T.C.M. (RIA) 85564; November 18, 1985. Remo Tinti, for the petitioners. Victoria Wilson Fernandez, for the respondent. WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: Respondetn determined a deficiency of $55,130 in petitioners' 1978 Federal income tax. This case is before the Court on respondent's motion for summary judgment under Rule 121 [1] on the issue of whether petitioners may deduct an alleged advanced minimum royalty payment and on respondent's motion to impose damages under section 6673. *69 Petitioners Jack and Clara Brown resided in Whitestone, New Yok, when the petition was filed herein. Clara Brown is a petitioner solely by virtue of having filed a joint return with her husband, Jack Brown (referred to herein as "petitioner"). Petitioners, in their opposition to respondent's motion, claim the following: On April 27, 1978, petitioner executed a Sublease Agreement with Weston Petroleum, Inc. (Weston), a nonrecourse promissory note in favor of Weston, and a Mining Services Agreement with Weston. Under the Sublease Agreement, petitioner acquired the right to mine coal on a specified tract of land. That agreement provides, in relevant part, as follows: MINIMUM ANNUAL ROYALTY
A. Sublessee agrees to pay to Sublessor a minimum annual royalty (the "Minimum Annual Royalty") with respect to each year of this Sublease of $120,000.00 regardless of the amount of coal, if any, which actually be mined, removed or sold from the Property during each year. The Minimum Annual Royalty shall be paid on December 31 of each year for the Lease Year that ends on that date with the first payment due on December 31, 1978 to cover the period from the commencement of this Sublease *70 until such date. The Minimum Annual Royalty payable with respect to the first year of this Sublease in the amount of $120,000.00 (the "Advanced Minimum Royalty") shall be paid by Sublessee simultaneously with the execution of this Sublease in the following manner: (1) Sublessee shall pay to Sublessor, in cash, simultaneously with the execution hereof, the aggregate sum of $30,000.00. (2) Sublessee shall pay to Sublessor, simultaneously with the execution hereof, by delivering to Sublessor a Promissory Note of even date herewith, in the form of Exhibit "B" attached hereto (the "Note"), the aggregate sum of $90,000.00, which Note shall bear interest at the rate of six (6%) percent per annum, require annual payments, and mature on December 31, 1988. * * * SECURITY INTEREST
To secure the due and punctual payment of the Note, together with accrued interest thereon, and all other amounts from time to time payable by Sublessee under this Sublease, Sublessee grants to Sublessor a mortgage on, and a Security Interest on, the below-described property (the "Collateral"). A. The coal and other rights granted hereunder to Sublessee. B. All improvements, buildings, structures, *71 equipment, machinery and other personal property of Sublessee used in connection with Sublessee's operations on the Property. C. All proceeds realized from such properties described in subparagraphs "A" and "B" above, including, without limitation, insurance proceeds from any loss or damage to the Property and other proceeds of any kind resulting from any event of loss with respect to the Property; provided,however, that except as hereinafter specifically set forth in this provision, this Sublease shall be without recourse to Sublessee; and Sublessor shall look only to the Collateral for payment of Sublessee's obligations secured hereby. The sublease contains no provision requiring payment by nonrecourse promissory note of the minimum annual royalties with respect to any year other than the first year of the sublease. The promissory note executed by petitioner requires that $9,000 of principal plus accrued interest be paid on December 31 of each year until the note is paid in full. The note provides that it is secured by petitioner's interest in the sublease and further provides that "[t]his Note is without recourse to Owner [petitioner]; and Owner shall not *72 be personally liable to Sublessor [Weston] for any amounts payable under this Note, including expenses incurred by Sublessor in enforcing payment of this Note. Sublessor shall look only to the collateral described in the Sublease for the payment of this Note." The Mining Services Agreedment engaged Weston, for the term of the lease, to mine coal and to perform all necessary ancillary functions. The agreement further provides, in relevant part, as follows: The Contract Miner [Weston] agrees to use its best efforts to mine at least 27,667 tons of coal in each of 1978, 1979, 1980, 1981, 1982, 1983, 1984, 1985, 1986, 1987 and 1988. To the extent that it does not mine at least 27,667 tons of coal per calendar year, it agrees to credit the Owner [petitioner] an amount of $8.25 per ton for each ton short of 15,000. In responding to interrogatories, petitioner disclosed that no coal was mined in 1978 or in any other year. On their 1978 Federal income tax return petitioners claimed a deduction of $120,000 based on their alleged payment of an advanced minimum annual royalty. Respondent disallowed that deduction in its entirety. Rule 121(b) provides that a decision may be rendered *73 upon motion for summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." In considering a motion for summary judgment we must view the facts and inferences to be drawn therefrom in the light most favorable to the party opposing the motion. Jacklin v. Commissioner,79 T.C. 340, 344 (1982). Such party must, however, set forth specific facts showing that there is a genuine issue for trial. Rule 121(d). In his motion for summary judgment respondent argues that petitioners' payment of $120,000 was not made pursuant to a minimum royalty provision and concludes that petitioner is not entitled to a deduction therefor. Generally an advanced royalty is deductible only in the year the mineral product is sold. Sec. 1.612-3(b)(3), Income Tax Regs. However, a current deduction is allowed when the advanced royalty is paid or accrued "as a result of a minimum royalty provision." Sec. 1.612-3(b)(3), Income Tax Regs.Because no coal was sold during the year *74 in issue, in order to be deductible the advanced royalty in question must have been paid pursuant to a minimum royalty provision. The requirements for a minimum royalty provision are as follows: For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease of for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. [Emphasis added.] Sec. 1.612-3(b)(3), Income Tax Regs.
To determine whether the requirements for establishing a minimum royalty provision have been met, we must look to the agreement as a whole, along with any pertinent additional information. Wing v. Commissioner,81 T.C. 17, 39 (1983). On numerous occasions this Court has held that where payment of a minimum royalty is made by nonrecourse note, payment of which is contingent upon coal production, there is no enforceable requirement that substantially uniform minimum royalties be paid annually, regardless of production. Oneal v. Commissioner,84 T.C. 1235, 1240 n. 8 (1985), and *75 cases cited therein. In Wing v. Commissioner,supra, one sentence of the sublease agreement required that a certain annual minimum amount be paid uniformly over the life of the lease, but that sentence was contradicted by subsequent provisions allowing payment by nonrecourse promissory note, under the terms of which none of the principal was required to be paid for 10 years. This Court found that payment of the note was contingent on taxpayer's mining coal and concluded that because payment was contingent there was no requirement of annual payment over the life of the lease. In Maddrix v. Commissioner,83 T.C. 613 (1984), the agreement in question provided for an "annual minimum royalty" in the amount of $300,000 for each year of the 10-year sublease, to be paid with $590,000 cash together with nonrecourse notes aggregating $1,950,000, bearing interest at 6 percent and payable in equal quarterly installments of $81,196. Despite the stated payment schedule, the other documents setting forth the terms of the transaction provided that the notes were payable out of coal sale proceeds, that the notes were nonrecourse, and that the holder's sole *76 remedy in the event of default was to proceed against the taxpayer's interest in the venture. This Court found that those documents reflected an intention that taxpayer's note be satisfied out of coal sales proceeds. On respondent's motion for partial summary judgment, we held, as a matter of law, that the taxpayer's execution of a nonrecourse note, payments on which were contingent upon coal production, did not establish an enforceable requirement that substantially uniform minimum royalties be paid annually in any event, regardless of production. Maddrix v. Commissioner,surpra at 623. In Vastola v. Commissioner,84 T.C. 969 (1985), the taxpayer was obligated annually to pay to the sublessor a nonrefundable minimum annual royalty of $40,000 per unit. For the most part, however, such payments were to consist of nonrecourse notes, which were payable in monthly amounts calculated per ton of coal shipped with the balances due 20 years after the date of execution of those notes. The holder's sole recourse, in the event of default, was against the taxpayer's interest in the coal and its proceeds. Upon consideration of the substance of the entire transaction, *77 we held that because the nonrecourse notes were payable solely out of the proceeds of coal production, there was no requirement that a substantially uniform amount of royalties be paid at least annually. In the instant case the Sublease Agreement States explicitly that there is no recourse against petitioner and that the sublessor can look only to the collateral described therein for payment of petitioner's obligations under the Sublease Agreement. The effect of these provisions is that petitioner is entirely free of personal liability with respect to his obligations arising from the Sublease Agreement and may, if he so desires, satisfy those obligations by executing a nonrecourse note. Because all payments due under the Sublease Agreement are secured only by the coal mine and proceeds therefrom, we find that those payments are contingdent upon coal production. Thus, we conclude that there is no requirement that a substantially uniform amount of royalties be paid at least annually. Consideration of the terms of the purported minimum annual royalty provision together with the liquidated damages provision of the Mining Service Agreement further evidences the absence of an unconditional *78 requirement that an annual payment be made. Under the liquidated damages provision, Weston agreed that if it failed to mine at least 27,667 tons of coal in any given year, it would pay petitioner $8.25 for each ton short of 15,000 tons. Thus, if Weston mined no coal in a certain year, it was obligated to pay poetitioner $123,750 ($8.75 X 15,000 tons). Petitioner's so-called unconditional obligation is therefore a complete "wash" when considered in conjunction with the other documents executed as part of the transaction. Petitioners seek to distinguish Wing v. Commissioner,supra, by arguing first, that the Sublease Agreement in this case required annual payments of $120,000 regardless of whether any coal was mined and, second, that the Sublease Agreement did not provide for payment of these annual minimum royalties by nonrecourse notes on which no payment was due for ten years. With respect to petitioners' first argument, although the Sublease Agreement stated that the payment of $120,000 was due annually regardless of whether coal was mined, these annual payments were secured only by petitioner's interest in the coal mine and proceeds therefrom. Because *79 payment of any amounts due pursuant to the Sublease Agreedment can be enforced only insofar as coal is mined or other proceeds are realized from the mining property, we have found that such payment is contingent upon coal production. Therefore, with respect to the requirement of payment of the annual royalties, we find no material distinction between the instant case and Wing. Similarly, the fact that the Sublease Agreement in this case does not expressly provide for payment of the minimum annual royalties with respect to any year other than the first year to be made by nonrecourse note does not distinguish this case from Wing, in light of our conclusion that the use of nonrecourse notes was allowed by the Sublease Agreement. Petitioners further seek to distinguish Maddrix v. Commissioner,supra, and Vastola v. Commissioner,supra, because payment of the nonrecourse notes given in payment of annual minimum royalties in those cases was made expressly contingent upon coal sales proceeds. We find no material distinction between the cited cases and the instant case. Although the documents before us do not contain express language making *80 obligations arising thereunder contingent upon coal sales proceeds, as discussed above, that is the clear effect of those documents. Thus, we see no reason to reach a result different from that in Maddrix and Vastola.
Finally, petitioner appears to argue that the provision requiring annual payment of $9,000 of the principal of the note meets the requirement in the regulation defining minimum royalty provision. The note under which the annual payment of $9,000 is due is a nonrecourse note, the terms of which expressly state that petitioner is not personally liable thereunder and that said note is secured only by the collateral described in the sublease. Thus, we find no enforceable requirement that annual payments under the note be made. Furthermore, we have held that the fact that the note may, in fact, be paid at some later date is not sufficient to establish the existence of a requirement of annual payment. Wing v. Commissioner,supra at 40-41. On the facts here presented we find no requirement of annual payment. We conclude, as a matter of law, that the royalties paid by petitioners in 1978 were not paid as a result of a minimum royalty provision *81 and, therefore, petitioners are not entitled to a deduction for that year for advanced royalties. Petitioners have not established that there is a genuine issue as to any material fact. Accordingly, respondent's motion for summary judgment will be granted. The remaining issue to be decided in whether petitioners are liable for damages under section 6673. As applicable herein, section 6673 provides that damages up to $5,000 shall be awarded to the United States whenever it appears that proceedings before the Tax Court have been instituted or maintained primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless. After considering the entire record in this case and in particular petitioners' oral arguments in opposition to respondent's motion, we do not find that petitioners are liable for damages under section 6673. We note that this Court has considered a number of factual situations and arguments concerning minimum annual royalty payments which were "paid," in large part, by means of a nonrecourse note and that this Court does not hesitate to award damages in the maximum allowable amount whenever it finds that a taxpayer's position is frivolous *82 or groundless or that a proceeding was filed or maintained primarily for delay. See Oneal v. Commissioner,supra.On the particular facts presented in the instant case, however, we do not find that the imposition of damages is warranted. To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩