STEPHEN HARMON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harmon v. Commissioner
Docket No. 4686-83.
United States Tax Court
T.C. Memo 1986-251; 1986 Tax Ct. Memo LEXIS 355; 51 T.C.M. (CCH) 1243; T.C.M. (RIA) 86251; June 19, 1986. Michael J. Sheber, for the petitioner. Michael Goldbas, for the respondent. WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: Respondent determined a deficiency of $25,726.19 in petitioner's 1977 Federal income tax. This case is before the Court on respondent's motion for partial summary judgment under Rule 121 [1] on the issue of whether petitioner may deduct an alleged advanced minimum royalty payment. Petitioner Stephen Harmon resided in Miami Beach, Florida, when the petition was filed herein. The Huron Coal Program (Huron) was formed in November 1977, for the purpose of acquiring the rights to mine *356 coal in Northumberland County, Pennsylvania.On December 9, 1977, petitioner acquired a one-half working interest in Huron for $11,000. Simultaneously with that purchase, petitioner entered into the following agreements: a Joint Operating Agreement with Delta Energy Corporation for the management of petitioner's interest in the coal venture; a Sales Agreement with Hoover Coal Sales, Inc., authorizing it to act as sales agent for petitioner; and a Mining Services Agreement with P & P Coal Company granting it the exclusive right to mine the coal on the property leased by Huron. In addition to the foregoing operating agreements, on December 9, 1977, petitioner, along with the other participants in Huron (the "sublessees"), entered into a sublease with Churchill Coal Corporation (Churchill) as sublessor, for the right to mine coal on a specified tract of land. The term of the sublease is a period of 15 years or until all mineable and merchantable coal has been removed from the property, whichever is later. The sublease provides for the payment of a minimum annual royalty as follows: Minimum Annual Royalty
(a) Each of Sublessees agrees to pay to Sublessor his pro rata share *357 of a minimum annual royalty (the "Minimum Annual Royalty") with respect to each year of this Sublease of $219,937 regardless of the amount of coal, if any, which may actually be mined, removed or sold from the Property during such year. The Minimum Annual Royalties payable with respect to the first 10 years of this Sublease, in the aggregate amount of $2,199,375 (the "Advance Minimum Royalty"), shall be paid by Sublessees simultaneously with the execution of this Sublease in the following manner: (1) Sublessees shall pay to Sublessor, simultaneously with the execution hereof, in cash the aggregate sum of $350,000 and (2) Sublessees shall pay to Sublessor, simultaneously with the execution hereof, by delivering to Sublessor their respective promissory notes of even date herewith, in the form of Exhibit B attached hereto (the "Notes"), the aggregate sum of $1,849,375. The Minimum Annual Royalty in respect of the tenth year and each succeeding year of this sublease shall be payable on Nov. 30th of each such year at the offices of Sublessor in New York City or at such other place as Sublessor may hereafter designate in writing. The sublease further provides that payment of the *358 required notes and all other amounts due under the sublease is secured by the "collateral," which consists of the coal, the rights granted to sublessees under the sublease, the improvements, buildings, structures, equipment, machinery, and other personal property of sublessees used in connection with their operations in the specified property, and all proceeds realized from any of the above-described properties. The sublease expressly states that, except as otherwise provided, the sublease shall be without recourse to sublessees and that sublessor shall look only to the collateral for payment of sublessees' obligations thereunder. Under the sublease petitioner agreed to pay, as his share of the minimum annual royalty, $4,398.74 for each year of the sublease, and further agreed that the minimum annual royalties payable with respect to the first 10 years of the sublease, the "Advance Minimum Royalty," would be paid upon execution of the sublease. To satisfy this obligation, petitioner paid Churchill $7,000 in cash and delivered a promissory note for the balance of the aggregate minimum annual royalties.Such note (the "Note") is captioned "Non-Negotiable Promissory Note (Without Recourse)" *359 and states that petitioner shall pay the principal sum of $39,187 with interest on the unpaid balance at an annual rate of six percent. The Note is payable over a 10-year period, with payments due on or before November 30th of each year, in the following amounts [2]: 1978
$2,020
1979
2,435
1980
2,867
1981
4,000
1982
4,000
1983
4,000
1984
4,000
1985
4,000
1986
4,000
1987
4,000
1988
4,000
The Note further provides that if there is a default in any payment for a period of 12 months after such payment is due and payable, and such default is not remedied within 3 months after written notice to petitioner, Churchill may declare the entire unpaid principal and the accrued and unpaid interest thereon to be immediately due and payable. The Note is without recourse to petitioner and is secured by petitioner's interest in the sublease. Churchill may look only to the collateral described in the sublease for payment of the Note. No coal was mined or sold during 1977 on the property leased by petitioner. On his *360 Federal income tax return for 1977, petitioner claimed a deduction of $47,159 from his coal mining activities with Huron, of which $46,188 was attributable to an alleged advanced minimum royalty payment. Respondent disallowed that deduction in its entirety. For purposes of ruling on respondent's motion herein, we are concerned solely with the $46,188 deduction for advanced minimum royalties. Summary judgment will be granted under Rule 121 only if the pleadings, affidavits, and other acceptable materials, if any, submitted to the Court show that no genuine issue of material fact exists and that a decision may be rendered as a matter of law. The burden of proving there is no genuine issue of material fact is on the moving party, and factual inferences will be viewed in the light most favorable to the party opposing the motion. Jacklin v. Commissioner,79 T.C. 340, 344 (1982). Such party must, however, set forth specific facts showing that there is a genuine issue for trial. Rule 121(d). In his motion for partial summary judgment respondent maintains that the royalties paid in 1977 are not deductible in that year as a matter of law. Specifically, he argues that *361 petitioner's claimed payment in 1977 of $46,188 was not made pursuant to a minimum royalty provision and concludes that petitioner is not entitled to a deduction therefor. Alternatively, respondent contends that only that portion of the prepaid minimum royalty which is attributable to 1977 may be deducted in that year. Because we agree with respondent that no payment was made in 1977 pursuant to a minimum royalty provision, we will not herein address respondent's alternative contention. Generally an advanced royalty is deductible only in the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. Sec. 1.612-3(b)(3), Income Tax Regs.; Wendland v. Commissioner,79 T.C. 355, 386 (1982), affd. 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984). However, a current deduction is allowed when the advanced royalty is paid or accrued "as a result of a minimum royalty provision." Sec. 1.612-3(b)(3), Income Tax Regs. Because no coal was sold during the year in issue, in order to be deductible the advanced royalty in question must have been paid pursuant *362 to a minimum royalty provision. The requirements for a minimum royalty provision are as follows: For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. [Emphasis added.] Sec. 1.612-3(b)(3), Income Tax Regs.
To determine whether the requirements for establishing a minimum royalty provision have been met, we must look to the agreement as a whole, along with any pertinent additional information. Wing v. Commissioner,81 T.C. 17, 39 (1983). This Court has held that where payment of a minimum royalty is made by nonrecourse note, payment of which is contingent upon coal production, there is no enforceable requirement that substantially uniform minimum royalties be paid annually, regardless of production. Oneal v. Commissioner,84 T.C. 1235, 1240 n. 8 (1985), and cases cited therein. Where a sublease agreement provided for an advanced minimum annual royalty of $60,000 ($6,000 for each *363 of the first 10 years of the sublease) to be paid with $10,000 cash and a nonrecourse note of $50,000, we held that such agreement did not contain a minimum royalty provision, within the meaning of section 1.612-3(b)(3) of the regulations. Wing v. Commissioner,supra.Although one sentence of the sublease agreement called for annual payments of a specified amount over the life of the lease, that sentence was contradicted by subsequent provisions allowing payment by nonrecourse promissory note, under the terms of which none of the principal was required to be paid for 10 years. We found that payment of the note was contingent on taxpayer's mining coal and concluded that, because payment was contingent, there was no requirement of annual payment over the life of the lease. Wing v. Commissioner,supra.See also Vastola v. Commissioner,84 T.C. 969 (1985). We reached a similar conclusion in Maddrix v. Commissioner,83 T.C. 613 (1984), affd. 780 F.2d 946 (11th Cir. 1986). There the taxpayer satisfied his obligation to pay a share of the annual minimum royalty by paying to the sublessor $31,230 *364 in cash and executing a nonrecourse note for $103,239. The note specified that it was secured solely by the taxpayer's fractional undivided interest in the sublease, the taxpayer was not personally liable for any amounts payable under the note, and for payment the sublessor could look only to the collateral described in the sublease. This Court found that the terms of the note, the sublease, and the private placement memorandum offering working interests in the coal sublease reflected an intention that the taxpayer's note be satisfied out of coal sales proceeds. We concluded, therefore, that there was no enforceable requirement that substantially uniform minimum royalties be paid annually in any event, regardless of production. Maddrix v. Commissioner,supra at 623. In the instant case, petitioner obligated himself under the sublease to pay his share ($4,398.74) of the minimum annual royalty and to prepay such royalties attributable to the first 10 years of the sublease. Although the sublease recites that a minimum annual royalty shall be paid with respect to each year of the sublease, it requires payment of such amount payable with respect to the first 10 *365 years of the sublease by means of a nonrecourse note, secured only by the sublease and proceeds therefrom. Thus, to satisfy his obligation under the sublease, petitioner paid Churchill $7,000 in cash and executed a nonrecourse note in the amount of $39,187 secured only by his interest in the sublease and the proceeds therefrom. The provisions in the sublease limiting petitioner's liability thereon were consistent with the terms of the Note. The Note provided that petitioner had no personal liability thereunder and that Churchill could look only to the collateral described in the sublease for payment. Notwithstanding the payment schedule set forth in the Note calling for annual payments, said Note is nonrecourse and, in the event of nonpayment, Churchill can proceed only against the sublease and the proceeds therefrom. Further, there is no remedy for any default under said Note unless the default is not cured within 3 months after written notice to petitioner, which notice cannot be given until the default has existed for 12 months. Therefore, a condition of default must have been in existence for at least 15 months before any means of collecting the amounts due under the Note *366 became available to Churchill. Thus, more than one year could elapse between payments. Under the facts here presented we find no requirement that annual payments be made. [3] The documents purporting to establish such requirement instead show that petitioner was under no obligation to make annual payments. We conclude as a matter of law that the royalties paid by petitioner in 1977 were not paid as a result of a minimum royalty provision and, therefore, petitioner is not entitled to a deduction for that year for advanced royalties. Petitioner has not established that there is a genuine issue as to any material fact. Because our conclusion that there was no requirement that annual payments be made is determinative of the issue presented, *367 we need not address the question of whether the payments called for under the Note were substantially uniform. In accordance with the foregoing, respondent's motion for partial summary judgment will be granted. An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The stated payments total $39,322. The difference between this amount and the amount set forth in the Note ($39,187) is unexplained.↩
3. Under the terms of the sublease, petitioner claims an obligation to make annual payments of his share of the minimum annual royalty which share equals $4,398.74. Even if we were to find that the payments called for under the Note satisfy the requirement that annual payments be made, such payments range in amount from $2,020 to $4,000. Not one of such payments equals the amount for which petitioner claims an obligation of annual payment.↩