MITCHELL AND JILL GOLDSTONE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goldstone v. Commissioner
Docket No. 6303-82.
United States Tax Court
T.C. Memo 1986-481; 1986 Tax Ct. Memo LEXIS 125; 52 T.C.M. (CCH) 660; T.C.M. (RIA) 86481; September 25, 1986. *125 P owned an interest in a coal mining venture under a sublease agreement. P, one of a number of sublessees, executed a nonrecourse note which was to pay for a large portion of the total "annual minimum royalty" due under the sublease. The nonrecourse note was secured by P's fractional share of the sublease, the collateral consisting of coal, improvements or mining equipment or any proceeds from the sale of same.The sublease agreement provided that upon failure of the sublessee to pay for a period of more than two years, the sublessor could provide notice of default and within the sublessor's discretion determine whether a loss would result. No coal was mined in 1977. The partnership made an election under sec. 761(a) I.R.C. 1954. P elected the accrual method of accounting and claimed a deduction for an advanced minimum royalty in the amount of $65,000. Held, R's motion for partial summary judgment is granted. As a matter of law, the royalties paid were not paid "as the result of a minimum royalty provision" within the meaning of sec. 1.612-3(b)(3), Income Tax Regs.Brown v. Commissioner,    F.2d    (2d Cir., Aug. 28, 1986), affg. T.C. Memo. 1985-564; *126 Maddrix v. Commissioner,83 T.C. 613 (1984), affd. 780 F.2d 946 (11th Cir. 1986), followed. J. Ritholz, for the petitioners. Louis Zeller, for the respondent. PANUTHOS
MEMOANDUM FINDINGS OF FACT AND OPINION PANUTHOS, Special Trial Judge: Respondent's Motion *127 for Partial Summary Judgment, filed May 14, 1986, was assigned for hearing, consideration and ruling thereon. [1] Respondent in his notice dated December 17, 1981 determined a deficiency in petitioners' Federal income tax for the taxable year 1977 in the amount of $20,006 and an addition to tax under section 6651(a)(1) [2] in the amount of $2,001. The case is before the Court on Respondent's Motion for Partial Summary Judgment, filed May 14, 1986, under Rule 121. The issue for decision is whether respondent is entitled to a summary adjudication on petitioners' claimed deductions for advanced minimum royalty payments. [3]
*128 At the time they filed their petition herein, petitioners resided at Yorktown Heights, New York. Petitioner, Mitchell Goldstone (hereinafter referred to as petitioner) was a limited partner in the partnership known as Anwar Coal Program (hereinafter Anwar) in 1977. By lease agreement, dated November 23, 1977, W. B. Cunningham and Lelia F. Cunningham, lessors, agreed to lease the rights to mine coal on a tract of land in West Virginia to the Blue Ridge Coal Company. [4] The lessee was required to pay an advance royalty of $1,000 and a royalty of two dollars per ton of coal mined. In an agreement, dated the same date, the Blue Ridge Coal Company assigned its interest in the lease to Marne Energy, Inc., a Florida corporation. [5] No advanced royalty was specified in this agreement. By agreement, dated December 1, 1977, Marne Energy, Inc. assigned its interest in the Cunningham lease to Yucatan Resources, Ltd., a Cayman Islands company. Under this assignment Yucatan agreed to pay cash in the amount of $110,000 and to execute a nonrecourse, non-negotiable promissory note in the amount of $3,000,000. By agreement dated November 30, 1977, Yucatan entered into a sublease agreement with *129 the partners in Anwar (hereinafter referred to as partners or co-owners). Yucatan leased to the partners, in undivided fractional shares equal to their interests in Anwar, the right to mine coal (the same rights Yucatan had received through successive assignments). Under this latter agreement, each of the sublessees agreed to pay Yucatan a minimum annual royalty with respect to each year of the sublease in the amount of $9,061,000 regardless of the amount of coal, if any, which might actually be mined. The sublessees further agreed to pay to Yucatan, at the time of execution of the agreement, cash in the amount of $432,050 and nonrecourse promissory notes aggregating $8,628,950. Paragraph Ten of the sublease agreement provided as follows: 10. EVENTS OF DEFAULT: The following shall constitute events of default as to any Sub-Lessee hereunder and under the Notes: A. If any of Sub-Lessees shall default in the payment of his respective pro rata share of any royalties and/or other monies required hereunder when the same shall become *130 due and payable, and, such default shall not have been remedied within thirty (30) days after written notice thereof shall have been received by such Sub-Lessee from Sub-Lessor. B. If any of Sub-Lessees shall default in the payment of his respective Note for a period of twenty-four (24) months after the same shall be due and payable, whether at maturity or at a date fixed for payment or pre-payment; and, such default shall not have been remedied within three (3) months after written notice thereof shall have been received by such Sub-Lessee from Sub-Lessor. Petitioner invested $3,250 cash in Anwar. He also executed a document entitled "non-negotiable promissory note (without recourse)" in favor of Yucatan, dated November 30, 1977, in the amount of $61,901. The note was secured by petitioner's fractional share in the sublease between Anwar partners and Yucatan. Yucatan was required to look to the collateral in the sublease for payment of the note. The collateral consisted of coal, any improvements or mining equipment used by Anwar to mine coal, and any proceeds realized from the sale of coal, or from the sale of improvements or equipment. No sales of coal were made in 1977 *131 or 1978. No coal was mined on behalf of Anwar in 1977 or 1978. For 1977, Anwar reported a loss in the amount of $9,133,880, which was primarily the advanced minimum royalty set forth in the sublease agreement between Anwar partners and Yucatan in the amount of $9,061,000. Anwar elected not to be taxed as a partnership under the provisions of section 761(a). Petitioners elected to use the accrual method of accounting for reporting income and losses from Anwar. Petitioners reported a loss from Anwar on a Schedule C attached to the 1977 Federal income tax return in the amount of $65,547, which included a deduction for an advanced minimum royalty in the amount of $65,000. Rule 121(b) provides that a decision may be rendered upon Motion for Summary Judgment if it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law," and that "partial summary adjudication may be made which does not dispose of all the issues in the case." The factual materials presented and the inferences to be drawn from such materials "must be viewed in the light most favorable to the party opposing the motion." Jacklin v. Commissioner,79 T.C. 340, 344 (1982), *132 and cases cited therein. [6]
Respondent relies, as a basis for his motion, on section 1.612-3(b)(3), Income Tax Regs., which provide, in part, that advance royalties are deductible only in the year in which a mineral product is sold. Respondent relies on our decision in Maddrix v. Commissioner,83 T.C. 613 (1984), affd. 780 F.2d 946 (11th Cir. 1986). We agree with respondent. See also Wing v. Commissioner,81 T.C. 17 (1983). Section 1.612-3(b)(3), Income Tax Regs., provides that advance royalties are deductible only in the year that the mineral product, in respect of which the advance royalties were paid or accrued, is actually sold. The regulation does recognize an exception *133 in the case of advance royalties paid or accrued as a result of a minimum royalty provision. The exception provides that advanced minimum royalties may, at the option of the payor, be deducted in the year they are paid or accrued. Maddrix v. Commissioner,83 T.C. at 620. In Maddrix no coal was sold in the year in issue and, accordingly, the taxpayer claimed a deduction pursuant to the exception as an advanced minimum royalty. We held that: [the taxpayer's] execution of a nonrecourse note, payments on which were contingent on coal sales proceeds, does not establish an enforceable requirement that substantially uniform minimum royalties be paid annually in any event, regardless of annual production. The contingent nature of the note is inherently inconsistent with the regulatory definition of a minimum royalty provision. * * * [83 T.C. at 623.] As pointed out by respondent, the facts in this case are similar to those in Maddrix. Petitioner and other partners of Anwar signed a sublease agreement giving petitioner an undivided share in the right to mine coal on a tract of land in West Virginia.No coal was mined, removed or sold in 1977. *134 The sublease agreement provided that each co-owner would pay his pro rata share of "minimum annual royalty" in the amount of $9,061,000, regardless of the amount of coal, if any, which might actually be mined, removed or sold from the property during each year. The sublease required the payment of the first year of the minimum annual royalty at the time of execution of the sublease agreement. The co-owners were to jointly pay $432,050 in cash and execute a nonrecourse promissory note totalling $8,628,950. The total of cash and nonrecourse notes in the sublease agreement equaled the minimum royalty of $9,061,000. The nonrecourse note signed by petitioner stated that he was indebted to Yucatan in the amount of $61,901. The note provided that it was payable monthly from the coal mined and sold at the rate of $6.97 per ton in respect of the co-owners fractional undivided interest in the sublease. Like the notes in Maddrix, the notes in this case are nonrecourse, payable from coal sales and secured only by the partners' interest in the mineral sublease agreement as well as mining equipment and structures, if any. As in Maddrix, petitioner elected to be taxed on the accrual *135 method of accounting. Petitioner deducted his proportionate share of advanced minimum royalty in the amount of $65,000, which was his share of the $9,061,000 royalty accrued by Anwar. We note that in Brown v. Commissioner,    F.2d    (2d Cir., Aug. 28, 1986), affg. T.C. Memo. 1985-564, the Court of Appeals held that "the inquiry in this limited area should be whether the failure to make a specified annual payment can result in the loss of all lease rights within the one-year period." [7] In Brown the Court of Appeals held that the taxpayers' only risk of losing their coal interests would be if through their actions they created an "event of default." After an analysis of the default provisions, the Court of Appeals found that the taxpayers did not risk losing their mineral rights because there is no "event of default" unless payment is delayed more than two years. Furthermore, even if an "event of default" was declared it was within the sublessor's discretion to determine whether a loss would result.Thus, the Court of Appeals concluded that "a possibility of the loss of mineral reserves is insufficient to satisfy the 'required' payment provision of the *136 Treasury Regulations and the standard set out in footnote 33 [of Wing v. Commissioner,supra at 41]." The "events of default" in this case are similar to those in Brown. First, the sublessee can create an event of default if a royalty payment is in arrears and not paid for thirty days following receipt of notice from the sublessor. The second event of default arises if payment is not made on the note for two years and then only after an additional three month grace period after notice. Thus, just as in Brown, if petitioners fail to pay the note they do not risk losing their mineral rights because there is no event of default unless payment is delayed more than two years. As in Brown, even if a default were declared, whether a loss would result was entirely within the hands of the sublessor. As a final matter, there were no payments other than petitioner's cash investment. Accordingly, the possibilities of payment are insufficient to satisfy section 1.612-3(b)(3), Income Tax Regs., and *137 similarly a possibility of the loss of mineral reserves is insufficient to satisfy the required payment provisions of the Regulations. Brown v. Commissioner,supra; Wing v. Commissioner,supra.
Accordingly, we find that the payments were not paid as a result of a minimum royalty provision and, therefore, as a matter of law, petitioners are not entitled to a deduction in 1977 for advance royalties. [8]
Respondent's Motion for Partial Summary Judgment will be granted. [9]
An appropriate order will be entered.
Footnotes
1. This case was assigned pursuant to section 7456(d)(4), Internal Revenue Code of 1954, as amended, and Rule 180, Tax Court Rules of Practice and Procedure.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
3. While the only issue in this case is the deductibility of claimed mining expenses totalling $65,613, the limited question before us on respondent's motion is the deductibility of the claimed royalty expense of $65,000. The remaining deductions of interest and management fees totalling $613 are not before us at this time.↩
4. While the agreement is dated November 23, 1977 it was notorized on December 2, 1977. ↩
5. This agreement was notorized on December 1, 1977.↩
6. We note that although given an opportunity to do so, counsel for petitioners did not file any document or make any argument which would lead us to the conclusion that petitioners dispute any of the facts as presented by respondent in his motion. Accordingly, all factual findings for purposes of the pending motion are found as presented by respondent in his motion, filed May 14, 1986, with attached exhibits and memorandum in support of the motion.↩
7. In this regard the Court of Appeals referred to the analysis in Wing v. Commissioner,81 T.C. 17, 41↩ (1983). (See footnote 33 therein.)
8. See also Vastola v. Commissioner,84 T.C. 969↩ (1985).
9. We note that counsel for petitioners did not present factual or legal argument in opposition to respondent's motion. Petitioners' counsel advised that his limited response was premised, at least in part, on the concern that additions to tax and damages might be imposed. The issue of additions to tax and damages is not before us at this time.↩