RAY D. WISEMAN AND JOY WISEMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wiseman v. Commissioner
Docket No. 700-85.
United States Tax Court
T.C. Memo 1987-364; 1987 Tax Ct. Memo LEXIS 364; 53 T.C.M. (CCH) 1432; T.C.M. (RIA) 87364; July 23, 1987. Arthur H. Boelter, for the petitioners. Chris Ray and Ruth Salek, for the respondent. *365 GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) (redesignated section 7443A(b) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rule 180 et seq. [1]
This case is before the Court on respondent's Motion For Partial Summary Judgment filed September 13, 1985, together with a supporting memorandum of law, affidavit, and exhibits. This case was calendered for hearing at the motions session of the Court on October 30, 1985. By order dated October 30, 1985, petitioners were directed to file with the Court, on or before November 29, 1985, a written response to respondent's pending motion. Respondent was permitted 30 days from petitioners' response to file a reply thereto. Petitioners filed, on December 2, 1985, pursuant to leave from the Court to file their response out of time, a memorandum brief, together with supporting affidavits, in opposition to respondent's Motion For Partial *366 Summary Judgment. On December 20, 1985, respondent filed a reply brief to petitioners' opposition brief. In a notice of deficiency dated November 14, 1984, respondent determined deficiencies in petitioners' Federal income tax for the taxable years 1976 through 1979 as follows: Taxable Year
Amount
1976
$  8,718.00
1977
$  7,533.00
1978
$ 21,571,00
1979
$ 14,976.00
The issues for our determination are whether respondent is entitled to summary adjudications regarding: (1) petitioners' claimed deductions for advance royalties for 1978 and 1979; (2) petitioners' claimed deduction of a lease selection fee for 1978; and (3) petitioners' claimed deduction of a contract mining services retainer fee for 1978. Petitioners timely filed joint Federal income tax returns as cash-basis taxpayers for the years in issue. Petitioners resided in Seattle, Washington when they filed their petition with the Court. On September, 1, 1978, Ray D. Wiseman (petitioner) executed the following documents with respect to a coal mining activity known as Pikeville Quadrangle: (1) a mineral exploration and lease selection agreement with Salem Minerals, Inc.; (2) a mineral lease *367 with Salem Minerals, Inc. for an 8-year period beginning September 1, 1978; (3) a nonrecourse promissory note in favor of Salem Minerals, Inc.; (4) a pledge agreement in favor of Salem Minerals, Inc.; (5) a mining services retainer agreement with Hurricane Mining Corp.; and (6) a consultant agreement with Euran Energy, Inc. for the management of petitioners' Pikeville Quadrangle coal mining activity. A lease modification was executed in December 1979 pertaining to the 8-year mineral lease with Salem for the period beginning September 1, 1978. On Schedule C -- Profit or (Loss) From Business or Profession -- attached to their 1978 and 1979 joint Federal income tax returns, petitioners claimed deductions with respect to their Pikeville Quadrangle coal mining activity. The mineral exploration and lease selection agreement with Salem Minerals, Inc. (Salem) gave petitioner the right to engage in mineral exploration on a specified tract of land located in Kentucky and also gave petitioner the right to select and lease one of the tract's two sub-tracts to mine coal. This lease selection right could only be exercised by petitioner prior to the agreement's expiration on November 30, 1978. *368 Petitioner paid Salem $ 5,000,00 for the mineral exploration and lease selection agreement. Petitioner also executed an 8-year mineral lease with Salem, beginning September 1, 1978, by which Salem leased to petitioner all the marketable seams of coal it possessed under the sub-tract selected by petitioner pursuant to the mineral exploration and lease selection agreement. The lease granted petitioner the right to mine coal and in return petitioner agreed to pay Salem a royalty. The lease required that Salem be paid a $ 30,000.00 royalty for 1978 no later than the execution of the lease. The lease also required the payment of a $ 30,000.00 minimum royalty per year for each remaining year of the lease. Paragraph 4(e) of the lease set out the terms for payment of the royalties: (i) With respect to payment required * * * [for 1978] * * * $ 3,000.00 in cash or by check and $ 27,000.00 by Non-Recourse Promissory Note and Pledge Agreement in the form attached hereto as Exhibit B. (ii) With respect to the second royalty payment, such shall consist of $ 4,000.00 cash or check and the balance by Non-Recourse Promissory Note in the form attached hereto as Exhibit B. The said cash portion *369 shall be prepaid and evidenced by a promissory note payable January 30, 1979. [2] With respect to the third annual royalty payment, such shall consist of $ 2,000.00 cash and the balance by Non-Recourse Promissory Note in the form attached hereto as Exhibit B. Said cash portion shall be prepaid and evidenced by promissory note payable January 30, 1980. (iii) Notwithstanding the provisions of subparagraphs 4(e)(i) and (ii) hereof, all payments of advance royalty after the third said payment may be paid entirely by Non-Recourse Promissory Note as described in this subpragraph. The lease gave Salem the right to terminate the lease on 10 days written notice upon petitioner's default of any material condition including payment of royalties when due. Petitioner executed and delivered to Salem a nonrecourse promissory note captioned "Non-Negotiable Secured Notes" dated September 1, 1978, as payment for the annual royalties required by the mineral lease. [3] The note provided that petitioner would pay Salem the sums set forth as follows on the dates set forth with interest *370 at the rate of six and one-half (6.5%) percent per annum, payable as set forth in the Pledge Agreement of even date, but in no event later than November 30, 1985, [4] except payments prior thereto shall be set forth in Pledge Agreement of even date herewith: $ 27,000
Execution of Main Agreement
$ 26,000
November 30, 1979
$ 28,000
November 30, 1980
$ 30,000
November 30, 1981
$ 30,000
November 30, 1982
$ 30,000
November 30, 1983
$ 30,000
November 30, 1984
$ 30,000
November 30, 1985
The note also provided that to secure the payment of the note, petitioner has granted the Payee a security interest in the collateral described in the Pledge Agreement of even date. * * * [The note] * * * shall in all respects be subject to the terms and conditions of the Pledge Agreement, including, without limitation, the recourse to the collateral alone in the event of default in payment of this note. The pledge agreement petitioner *371 executed in favor of Salem dated September 1, 1978, granted Salem a security interest in all coal underlying petitioner's leased property and in all proceeds from the sale of the coal. The pledge agreement obligated petitioner to pay Salem 72.5 percent of gross receipts actually received by petitioner from the coal mined from the leased property. The proceeds were to be applied first against interest and then against principal due on the nonrecourse promissory note. In the event petitioner defaulted in his performance of any term of the pledge agreement, including payment of principal or interest at the maturity of the loan, the pledge agreement provided Salem with rights and remedies. Under the terms of the pledge agreement, Salem's rights upon petitioner's default included the right to transfer record ownership of the collateral to Salem. The pledge agreement also provided that [n]notwithstanding anything to the contrary contained herein or in the Note * * * to which the pledge agreement relates, it is agreed that in the event that the proceeds from the disposition of any of the pledged interest(s) are insufficient to cover the principal and interest of the loan plus expenses *372 of the sale, the Pledgor [petitioner] shall not be liable to the Pledgee [Salem] for any deficiency or otherwise.
The pledge agreement was to remain in effect until the payment of principal and interest at the maturity of the nonrecourse note. In December 1979, petitioner and Salem modified the 8-year mineral lease executed September 1, 1978. The modification extended the mineral lease for a consecutive additional year and provided that the royalty due for the additional lease year was to be paid by a non-negotiable secured note on the same terms as the nonrecourse note that petitioner executed contemporaneously with the lease. The lease modification extended the due date for payment of the 1979 royalty to no later than January 31, 1984 and provided that the 1979 royalty was to be paid entirely in cash or by check. The modification also gave Salem the right to request petitioner's personal promissory note to evidence payment of the 1979 royalty if Salem so desired. Petitioner executed a recourse promissory note as payment for the 1979 royalty. The modification also extended the due date of the nonrecourse note executed September 1, 1978 to November 30, 1986. Petitioner *373 also executed a mining service retainer agreement on September 1, 1978 in which petitioner contracted Hurricane Mining Corp. to mine coal for petitioner for the term of the mineral lease. Petitioner paid Hurricane Mining Corp. $ 7,000.00 to retain Hurricane's service for the term of the lease. No coal was mined or sold during 1978 or 1979 on the property leased by petitioner. On Schedule C attached to their 1978 joint Federal income tax return, petitioners claimed a $ 30,000.00 advance royalty deduction, a $ 5,000.00 lease selection fee deduction a $ 7,000.00 mining retainer fee deduction, and a $ 4,000.00 deduction for legal and professional fees. On Schedule C attached to their 1979 joint Federal income tax return, petitioners claimed a $ 30,000.00 advance royalty deduction. Respondent disallowed petitioners; claimed Schedule C deductions in their entirety for both 1978 and 1979. Under Rule 121, summary judgment may be granted "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that *374 there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). Partial summary judgment may also be granted. Rule 121(b). The moving party bears the burden of proving there is no genuine issue of material fact. Jacklin v. Commissioner,79 T.C. 340, 344 (1982); Espinoza v. Commissioner,78 T.C. 412, 416 (1982). The party opposing a properly supported motion cannot rest upon the mere allegations or denials in his pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d). The standard for granting a motion for summary judgment requires that there be no genuine issue of material fact. A material fact is one that is both relevant to an element of a claim or defense and that might effect the outcome of a lawsuit. The substantive law governing a claim or defense determines the materiality of a fact. Entry of summary judgment is not precluded by disputes over irrelevant or immaterial facts. Anderson v. Liberty Lobby, Inc.,    U.S.    , 106 S. Ct. 2505, 2510 (1986); *375 T.W. Elec. Service v. Pacific Elec. Contractors,809 F.2d 626, 630 (9th Cir. 1987). In determining if a genuine issue of material fact exists, all facts and inferences must be viewed in the light most favorable to the party opposing the motion. Anderson v. Liberty Lobby, Inc.,106 S. Ct. at 2513; Jacklin v. Commissioner, supra at 344; Espinoza v. Commissioner, supra at 416. A genuine dispute over a material fact precluding the grant of summary judgment exists "if the evidence is such that a * * * [judge or] jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., supra at 2510. Summary judgment may be granted if the nonmoving party's evidence is "merely colorable * * * or is not significantly probative." Anderson v. Liberty Lobby, Inc., supra at 2511 (citations omitted). For purposes of ruling on respondent's Motion For Partial Summary Judgment, we are concerned with the $ 30,000.00 deduction for advance royalties claimed for 1978 and 1979, with *376 the $ 5,000.00 lease selection fee deduction claimed for 1978, and with the $ 7,000.00 mining retainer fee deduction claimed for 1978. [5] We will first address the advance royalty issue. We will then address the deductibility of the claimed lease selection fee and the mining retainer fee. Advance Royalties
Respondent argues that petitioners are not entitled to the advance royalty deductions claimed on Schedule C attached to their 1978 and 1979 joint Federal income tax returns. Relying upon our decision in Vastola v. Commissioner,84 T.C. 969 (1985), respondent contends that the documents executed by petitioner with respect to the Pikeville Quadrangle coal mining activity do not contain a minimum royalty provision within the meaning of section 1.612-3(b)(3), Income Tax Regs. Accordingly, in respondent's view, the royalties for 1978 and 1979 were not paid pursuant to a valid minimum royalty provision *377 as required by the regulation and are not deductible. Petitioners contend that the royalties paid in 1978 and 1979 are deductible because the mineral lease, nonrecourse promissory note, and pledge agreement, when considered as a whole, establish that the royalties for 1978 and 1979 were paid pursuant to a valid minimum royalty provision. Section 1.612-3(b)(3), Income Tax Regs., sets forth the rules for deductibility of advance royalties. Generally, an advance royalty is deductible only in the year the mineral product, for which the royalty is paid, is sold. Sec. 1.612-3(b)(3), Income Tax Regs. When the advance royalty is paid or accrued "as a result of a minimum royalty provision," an exception to the general rule is provided by the regulation and the advance royalty may be deducted in the year the royalty is paid or accrued even though no mineral product has been sold. Sec. 1.612-3(b)(3), Income Tax Regs.
For purposes of the regulation, a minimum royalty provision requires that a substantially uniform *378 amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. * * *
Sec. 1.612-3(b)(3), Income Tax Regs. The regulation is valid. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984), affg. 79 T.C. 355 (1982), cert. denied 469 U.S. 1034 (1984); Wing v. Commissioner,81 T.C. 17 (1983). Because no coal was sold during 1978 and 1979, the royalties for these years are deductible only if they were paid pursuant to a minimum royalty provision within the meaning of the regulation. Sec. 1-612-3(b)(3), Income Tax Regs.
A valid minimum royalty provision must contain a requirement that a substantially uniform amount of royalties be paid at least annually over the term of the lease to satisfy the regulation. Capek v. Commissioner,86 T.C. 14, 41 (1986); Vastola v. Commissioner, supra;Wing v. Commissioner, supra. A minimum royalty provision does not satisfy the regulation if the provision permits *379 the deferral of royalty payments. There must be an enforceable obligation to make a royalty payment each year. Oneal v. Commissioner,84 T.C. 1235, 1241 (1985); Vastola v. Commissioner, supra at 975-976; Wing v. Commissioner, supra at 38 n. 30. On several occasions, we have determined if nonrecourse notes given as payment of advance royalties satisfy the payment requirement of section 1.612-3(b)(3), Income Tax Regs.If payment of the nonrecourse note may be deferred, the purported payment of advance royalties by nonrecourse note does not satisfy the regulation "which sets out that a minimum royalty provision must require payment at least annually. That the note may in fact be paid at some later date is not sufficient to establish the existence of such a requirement." Wing v. Commissioner, supra at 40-41. See also Capek v. Commissioner, supra;Oneal v. Commissioner, supra.Likewise, nonrecourse notes given as payment of advance royalties do not satisfy the *380 payment requirement of section 1.612-3(b)(3), Income Tax Regs., when payment of the nonrecourse note is contingent upon coal production. In Vastola v. Commissioner, supra at 975-976, we held that a nonrecourse note on which the only periodic payments are contingent on production is, under the interpretation of section 1.612-3(b)(3), Income Tax Regs., supra, in Wing and Maddrix, too illusory to satisfy the provision in the regulation that the agreement of the parties require annual uniform payments over the life of the lease. * * * We must look to the agreement as a whole to determine whether the requirements for establishing a minimum annual royalty provision have been met. Wing v. Commissioner, supra at 39. Petitioner argue that payment of the nonrecourse promissory note given as payment of the royalties due under the lease is not contingent solely upon coal production, as respondent claims, if petitioners have an economic incentive to make payments on the nonrecourse note. Petitioners maintain that there is economic incentive to pay the nonrecourse note if the value of the *381 coal securing the note exceeds the amount to be paid on the note. Therefore, petitioners assert that the Court must first resolve a material factual issue, namely the value of the coal lease securing payment of the nonrecourse note. Petitioners' argument is without merit. We have previously addressed and rejected their argument in other cases involving payment of advance royalties by nonrecourse note. We have repeatedly held that the fact that the securing property might have sufficient value to assure the ultimate payment of the nonrecourse promissory note is irrelevant to the applicability of section 1.612-3(b)(3), Income Tax Regs.Capek v. Commissioner, supra;Vastola v. Commissioner,84 T.C. 969 (1985); Wing v. Commissioner, supra.
We now turn and address petitioners' argument that they are entitled to the royalty deductions claimed for 1978 and 1979 because the royalties for these years were paid pursuant to avalid minimum royalty provision satisfying section 1.612-3(b)(3), Income Tax Regs. The documents executed with respect to the Pikeville Quadrangle coal mining venture *382 do not establish the existence of a "requirement that a substantially uniform amount of royalties be paid at least annually over the term of the lease" as required by the regulation. Capek v. Commissioner, supra at 41. Accordingly, petitioners are not entitled to their claimed royalty deductions for 1978 and 1979. Although the mineral lease, as modified, required a $ 30,000.00 annual royalty to be paid Salem over the term of the lease, an examination of the terms of the lease, the nonrecourse promissory note, and the pledge agreement leads us to conclude that a valid minimum royalty provision is not present here. The royalties for 1978 and 1980 were paid almost entirely by nonrecourse note and the royalties for 1981 through 1985 were paid in their entirety by nonrecourse note. Payment of the nonrecourse note was, by the terms of the pledge agreement, contingent upon coal production and the only payments actually required by the nonrecourse note were eventual payments due no later than November 30, 1986. It is well established that when, as here, payment of a nonrecourse note given as payment for the royalties due under a lease is contingent upon coal production *383 and the only payments required by the nonrecourse note are eventual payments, a valid minimum royalty provision does not exist because payment is not required to be made annually. Capek v. Commissioner, supra;Vastola v. Commissioner, supra;Wing v. Commissioner,81 T.C. 17 (1983). Furthermore, payment of the 1979 royalty by recourse note does not render that royalty payment deductible because the recourse note was not given pursuant to a valid minimum royalty provision. In determining whether a valid minimum royalty provision is created by an agreement, the terms of the agreement as a whole must be examined. Wing v. Commissioner, supra.Although payment of the recourse note given as payment of the 1979 royalty was not contingent upon coal production, payment of the nonrecourse note given as payment for the remaining royalties due under the lease was contingent upon coal production. Also, payments required by the nonrecourse note were only eventual payments. In these circumstances, it cannot be said that there is an enforceable obligation to make a substantially uniform payment each year as required by the regulation, *384 Oneal v. Commissioner,84 T.C. 1235 (1985); Wing v. Commissioner, supra, simply because the royalty for one year was made by recourse ote, the payment of which was not contingent upon coal production. Petitioners further argue that the possibility of the loss of mineral reserves is sufficient to satisfy the payment requirement of the regulation. Wing v. Commissioner, supra at 41 n. 33. In Brown v. Commissioner,779 F.2d 27, 30 (2d Cir. 1986), affg. a Memorandum Opinion of this Court, the Court of Appeals held that the relevant inquiry in this area is "whether the failure to make a specified annual payment can result in the loss of all lease rights within the one-year period." To meet this standard, petitioners must show that their failure to make the annual payments required by the documents executed with respect to the Pikeville Quadrangle coal mining venture will result in the loss of their mineral property. Brown v. Commissioner, supra at 30. After carefully reviewing these documents, we conclude *385 that petitioners' risk of loss of their mineral reserves in the leased property does not satisfy the payment requirement of the regulation. Under the terms of the nonrecourse note, petitioners risk the loss of their mineral interest in the leased property only if they fail to pay the note when it becomes due on November 30, 1986. Thus, petitioners' failure to make annual nonrecourse note payments does not risk loss of their mineral interest in the leased property. Petitioners' argument that they risk loss of their mineral interest because of the nonrecourse note's annual payment schedule and what they claim is Salem's right to accelerate payment of any unpaid balance of the note upon petitioners' failure to make an annual payment pursuant to the schedule, a right not contained in either the note or the pledge agreement securing the note, disregards the unambiguous language of the nonrecourse note. There is only the possibility of loss of petitioners' mineral interest under the terms of the nonrecourse note. A mere possibility of the loss of mineral reserves is insufficient to satisfy the required payment provisions of the regulations. Brown v. Commissioner, supra at 31. *386 [6]
Petitioners seek to distinguish Wing v. Commissioner, supra, and Vastola v. Commissioner, supra. Petitioners contend that Wing is inapplicable in this instant case because the lease term in Wing expired before the nonrecourse note came due. We disagree. As we made clear in Vastola v. Commissioner, supra at 975, "while the lease term in Wing indeed expired before the note came due this fact was not the basis of our decision therein." Petitioners also attempt to factually distinguish Vastola from this case. We find petitioners' attempts unpersuasive and do not find Vastola materially distinguishable from the instant case. [7] Because no royalties for 1978 and 1979 were paid *387 pursuant to a valid minimum royalty provision pursuant to section 1.612-3(b)(3), Income Tax Regs., respondent's disallowance of the advance royalty deductions claimed by petitioners in 1978 and 1979 is sustained.
Lease Selection Fee
Respondent contends that the $ 5,000.00 fee paid Salem for the right to conduct mineral explorations and to select the tract of land ultimately *388 leased from Salem must be capitalized as a lease acquisition cost under section 1.162-11(a), Income Tax Regs., and recovered through amortization deductions over the term of the mineral lease. Petitioners contend that the $ 5,000.00 fee is currently deductible expense under section 1.612-3(c), Income Tax Regs., as a delay rental. We agree with respondent. It is well settled that "the cost of acquiring a lease is a capital expenditure, recoverable through amortization over the life of the lease." Steinway & Sons v. Commissioner,46 T.C. 375, 381 (1966); sec. 1.162-11(a), Income Tax Regs. A delay rental is "an amount paid for the privilege of deferring development of the property and which could have been avoided by abandonment of the lease, or by commencement of development operations, or by obtaining production." Sec. 1.612-3(c)(1), Income Tax Regs.
The $ 5,000.00 petitioner paid Salem pursuant to the mineral exploration and lease selection agreement is not currently *389 deductible as a delay rental. Petitioner's obligation to pay Salem the mineral exploration and lease selection fee existed separately and apart from the mineral lease signed with Salem. Payment of the $ 5,000.00 fee could not be avoided by abandoning the mineral lease, by commencing development of the mineral property, or by obtaining mineral production as required by the regulation. Sec. 1.612-3(c)(1), Income Tax Regs. Petitioner paid Salem for the right to conduct mineral explorations on a tract of land and to select the sub-tract that he ultimately leased from Salem. As such, the $ 5,000.00 fee is a lease acquisition cost that must be amortized over the term of the mineral lease. Sec. 1.162-11(a), Income Tax Regs.; Steinway & Sons v. Commissioner, supra.Respondent's determination on this issue is sustained.
Mining Retainer Fee
On Schedule C attached to their 1978 joint Federal income tax return, petitioners deducted the $ 7,000.00 fee paid Hurricane Mining Corp. for contract mining services for the term of *390 the mineral lease. Respondent contends that the mining retainer fee is a payment for future services and therefore is not currently deductible. Thus, the fee must be amortized over the term of the mining services agreement. Petitioners contend that no capital asset was created by the mining services contract and that the fee is therefore currently deductible. We agree with respondent. Payments for future services are capital expenditures that must be amortized over the terms of the agreement. Estate of Boyd v. Commissioner,76 T.C. 646, 677 (1981), and cases cited therein. Despite petitioners' attempt to argue the contrary, the $ 7,000.00 mining retainer fee is a capital expenditure that may not be deducted in its entirety in 1978 and that must be amortized over the term of the mining services contract. Respondent's determination is sustained on this issue. In summary, we find that respondent has satisfied his burden of proving that no genuine issue of material fact exists and that he is entitled to a decision as a matter of law with respect to the deductions claimed *391 by petitioners for advance royalties, the lease selection fee, and the mining services retainer fee. We have carefully examined petitioner's affidavits submitted in opposition to respondent's motion for summary judgment and we find that petitioners do not raise any genuine issue of material fact with respect to the three issues that are the subject of respondent's Motion For Partial Summary Judgment under the guidelines set forth in Anderson v. Liberty Lobby, Inc.,    U.S.   , 106 S. Ct. 2505 (1986). To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The lease modification changed the payment method of the royalty due for 1979. See p. 8, infra.↩
3. Even though the note is captioned in the plural, only one nonrecourse promissory note was executed by petitioner on September 1, 1978. ↩
4. The lease modification extended this date to November 30, 1986. See p. 8, infra.↩
5. In his Motion For Partial Summary Judgment, respondent does not contest the deductibility of the $ 4,000.00 claimed by petitioners as a deduction for legal fees on Schedule C attached to their 1978 joint Federal income tax return.↩
6. See also Goldstone v. Commissioner,T.C. Memo. 1986-481↩. Because the risk of loss of petitioners' mineral interest under the nonrecourse note given as payment for the royalties due for 1978 and 1980 through 1985 fails to satisfy the regulations' annual payment requirement, the terms of the recourse note given as payment for the 1979 royalty and the note given as payment for the 1986 royalty are immaterial. 7. Petitioners also argue that the royalties claimed as deductions in 1978 and 1979 were properly deducted in the years in issue pursuant to the accrual method of accounting. See sec. 1.461-1(a)(2), Income Tax Regs. Petitioners further attempt to distinguish Vastola v. Commissioner,84 T.C. 969 (1985), from the instant case by arguing that our decision in Vastola improperly restricts the accrual method of accounting. Petitioners are cash-basis taxpayers and these arguments are not relevant to support the deductibility of the royalties in issue. Furthermore, we have determined that our decision in Vastola does not restrict the accrual method of accounting. Vastola v. Commissioner, supra↩ at 977-979.