CLARENCE K. HOWE AND MARGARET C. HOWE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Howe v. Commissioner
Docket No. 9294-82.
United States Tax Court
T.C. Memo 1985-408; 1985 Tax Ct. Memo LEXIS 220; 50 T.C.M. (CCH) 689; T.C.M. (RIA) 85408; August 12, 1985. Herbert L. Zuckerman, for the petitioners. Francis J. Strapp, Jr., for the respondent. PETERSON
MEMORANDUM OPINION PETERSON, Special Trial Judge: This case was assigned to Special Trial Judge Marvin F. Peterson pursuant to section 7456, Internal Revenue Code of 1954, as amended, and Rule 180, et seq. [1]
*221 Respondent determined deficiencies in petitioners' Federal income taxes for the year 1977 and 1978 in the amounts of $17,846.08 and $1,463.00, respectively. The case is before this Court on respondent's motion for partial summary judgment under Rule 121 with regard to the year 1977. The issues raised by respondent's motion are (1) whether petitioners may deduct a claimed loss to the extent it resulted from annual minimum royalty payments and (2) if so, whether the amount of the deduction must be limited to the portion of the claimed annual minimum royalty payments allocable to 1977. At the time they filed their petition in this case, petitioners resided in Rhinebeck, New York. Petitioners filed joint Federal income tax returns for the years 1977 and 1978 with the Internal Revenue Center at Holtsville, New York. Petitioners elected to be taxed on the accrual method of accounting with respect to their proportionate share of items of income gain, loss, deductions and credits arising from petitioner Clarence K. Howe's [2] investment in Plaza Coal Program (the Program). On their joint return for 1977, petitioners claimed a business loss of $42,620.02 attributable to participation *222 in the Program. The loss was comprised of advanced minimum royalties in the amount of $42,075.34 and miscellaneous management fees, organizational costs, legal and professional fees in the amount of $544.68. Respondent disallowed the deductions in their entirety. For purposes of ruling on respondent's motion herein, we are concerned solely with the amount of $42,075.34 deducted for royalty payments. The Program is a joint venture which was formed in late 1977 for the purpose of developing and commercially exploiting coal bearing deposits in the State of Pennsylvania. All of the co-owners of the Plaza Coal Program elected under section 761(a) to be excluded from the application of Subchapter 1 (relating to partners and partnerships) of the Internal Revenue Code as amended. Because this case is before the Court on a motion for partial summary judgment under Rule 121, the factual materials presented and the inference *223 to be drawn from such materials must be viewed in the light most favorable to the party opposing the motion. Jacklin v. Commissioner,79 T.C. 340, 344 (1982). In addition, for purposes of this motion, respondent accepts the form of the transactions in question at face value. Therefore, we do the same. On December 15, 1977, petitioner entered into a sublease agreement with Fairchild Coal Corporation (the sublessor of certain rights to mine coal) for the right to mine coal for a period of 11-1/2 years unless the sublease was terminated sooner. Petitioner agreed to pay a pro rata share of a royalty based on the number of tons of coal mined, removed, and sold and on the price at which such coal was sold. It was also agreed that petitioner would pay a pro rata share of a minimum annual roayalty of $177,650 for 11-1/2 years with $1,598,850 (the first 9 years of minimum payment) being due immediately. The $1,598,850 which was characterized as an advanced minimum royalty was to be paid simultaneously with the execution of the sublease by all of the investors in the Program as follows: (1) nonrecourse notes in the aggregate amount of $1,292,000 and (2) cash in the aggregate *224 amount of $306,850. Petitioner purchased one half of one investment unit resulting in a share of the total amounts due consisting of $11,000 cash and a $34,000 nonrecourse note. The minimum payments for the tenth and succeeding years were to the be paid on December 31 of each such year. The minimum payments described above were to offset and reduce the regular tonnage royalty at the rate of $5.50 per ton for the first 32,300 tons of coal mined, removed, and sold for each year during the first ten years of the sublease. The minimum payments for the tenth and succeeding years were to be reduced by the tonnage royalty payable during each such year of the sublease. The nonrecourse notes used to satisfy the minimum royalty obligation bore an interest rate of 6% and were payable 30 days after the end of each month beginning December 31, 1977 in an amount equal to $5.65 multiplied by the number of tons of coal up to 1,700 tons mined and removed during the year in proportion to the debtor's share of the sublease. To the extent the payments described above made during the year total an amount less than a minimum amount specified in the note, the difference is due and payable on December *225 1 of the year in question. Petitioner purchased one-half of one investment unit in the program. The note set out the minimum payments for owners of one investment unit as follows: 1978
4,000
1979
8,000
1980
8,000
1981
8,000
1982
8,000
1983
8,000
1984
8,000
1985
8,000
1986
8,000
Any unpaid principal or accrued interest was due on December 31, 1986 or the earlier termination of the borrowers sublease. Upon default on either the note or the royalty obligation, Fairchild Coal Corporation could look only to the collateral described in the sublease for payment. The collateral was limited to: (1) the coal and other rights granted under the sublease; (2) improvements, buildings, structures, equipment, machinery and other personal property of the subleases used in connection with the operations under the sublease; and (3) any proceeds from property described in (1) and (2). Rule 121(b) provides that a decision may be rendered upon motion for summary judgment if it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." and that "partial summary adjudication may be made which does not *226 dispose of all the issues in the case." Respondent contends that there is no genuine issue of material fact with regard to petitioner's claimed deduction for advanced minimum royalties. He contends further that the royalties paid in 1977 are not deductible in that year as a matter of law because they were not paid pursuant to a minimum royalty provision within the meaning of section 1.612-3(b)(3), Income Tax Regs.
Generally, advanced royalty payments are deductible only in "the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold." Section 1.612-3(b)(3), Income Tax Regs. In the instant case, no coal was either mined or sold in 1977, therefore, no royalty payments would be deductible under the general rule. However, when the advanced royalty is paid or accrued "as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued." The regulation goes on to provide: For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least *227 annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. Respondent takes the position that because the royalty obligation and the notes used to satisfy that obligation are nonrecourse, secured only by petitioner's interest in the sublease agreement, payment is conditioned on the sale of coal. Thus, respondent concludes that because of the contingent nature of the obligation, there is no certainty that the minimum royalties will ever be paid as required by section 1.612-3(b)(3), Income Tax Regs. Petitioner argues, however, that the promissory note requires that fixed and definite payments be made each year during the term of the sublease, regardless of the amount received from the sale of coal. We are concerned here only with whether the obligation to pay royalties is sufficiently definite to satisfy the requirements of section 1.612-3(b)(3), Income Tax Regs. The regulation requires that there be more than a valid obligation to pay royalties. It requires that the provision to pay not only permits, but requires the annual payment of a uniform amount of royalties *228 in the absence of mineral production requiring payment of aggregate royalties in a greater amount. It is not the intent of the parties regarding how the note is to be satisfied that is controlling but, rather, whether the provision itself requires substantially uniform annual payments to be made regardless of coal production. Eventual payment due to adequate security does not establish the existence of a requirement that annual payments be made. Vastola v. Commissioner,84 T.C. 969, 974 (1985); Maddrix v. Commissioner,83 T.C. 613, 623 (1984), on appeal (11th Cir., May 12, 1985). In Maddrix v. Commissioner,supra at 620-623, we found that the nonrecourse note in question was dependent on the production of coal even though the note provided for minimum quarterly installments. We reached this conclusion based on the fact that the note was secured solely by the taxpayer's interest in the sublease, that the taxpayer would not be personally liable for any amounts payable under the note, and that the sublessor would look only to the collateral described in the sublease. Similar to Maddrix, the documents in the instant case reveal *229 that petitioner's note was secured solely by his interest in the sublease and that petitioner would not be personally liable for any amounts payable under the note. Thus, we conclude, that the royalty obligation is dependent on the production of coal. A nonrecourse note on which the only periodic payments are contingent on production does not satisfy the provision in the regulation that the agreement of the parties requires annual uniform payments over the life of the lease. Vastola v. Commissioner,supra at 975-976. Petitioner also argues that even if the payments on the nonrecourse note are contingent on the production and sale of coal, summary judgment cannot be rendered on the legal issue of whether the minimum royalty payment requirement of section 1.612-3(b)(3), Income Tax Regs., is satisfied because of the disputed factual question which remains of whether the note had economic substance. Petitioner argues that where the facts show that the value of the security underlying the nonrecourse obligation exceeds the amount of the obligation, the obligation is valid since there is sufficient economic incentive to pay the nonrecourse obligation citing Commissioner v. Tufts,461 U.S. 300 (1983); *230 Crane v. Commissioner,331 U.S. 1 (1957); and Estate of Franklin v. Commissioner,544 F.2d 1045 (9th Cir. 1976). Accordingly, he contends incentive is a factual issue that precludes entry of summary judgment. We fail to see the relevance of petitioner's argument. Here, there is no issue as to the validity of the nonrecourse note, but whether the obligation to pay meets the mandate of section 1.612-3(b)(3), Income Tax Regs. We conclude the nonrecourse note does not. Clearly, the obligation does not require petitioner to make annual payments. The obligation only requires annual payments if there is the production and sale of coal. Under these circumstances, petitioner does not qualify for the advanced royalty deduction. Maddrix v. Commissioner,supra at 623; Vastola v. Commissioner,supra at 973. The fact that there may be eventual payment because of the value of the coal reserves also fails to meet the requirement of the regulation which sets out that a minimum royalty provision must require payment at least annually. Wing v. Commissioner,81 T.C. 17, 40-41 (1983). Because we have *231 concluded that the royalty provision does not satisfy the requirement of an advanced minimum royalty provision as a matter of law, it is unnecessary to consider respondent's alternative argument that only the portion of the claimed advanced minimum royalties allocable to 1977 is properly deductible. Respondent's motion for partial summary judgment will be granted. An appropriate order will be entered.
Footnotes
1. All rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The amounts here in dispute relate to the activities of Clarence K. Howe. Margaret C. Howe is a party to this litigation only because she filed a joint return with her husband. When used hereinafter in the singular, "petitioner" will refer to Clarence K. Howe.↩