**Clarence K. HOWE and Margaret C. Howe, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 707, Docket 86–4142.**

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1987.

Decided March 17, 1987.

Herbert L. Zuckerman, Newark, N.J. (Robert J. Alter, Sills Beck Cummis Zuckerman Radin Tischman & Epstein, Newark, N.J., of counsel), for petitioners-appellants.

---

4. It is not entirely clear from appellants' brief whether they are seeking review of the district court's dismissal of their state antitrust claim. *See* Brief of Plaintiffs-Appellants at 43–45. However, to the extent that such review is requested, appellants' state antitrust claim under the Donnelly Act, N.Y.Gen.Bus.Law § 340 (McKinney 1968 & Supp.1987), tracks their federal antitrust claim under the Sherman Act and properly was dismissed. *See Hsing Chow v. Union Cent. Life Ins. Co.,* 457 F.Supp. 1303, 1308 (E.D.N.Y.1978); *Harlem River Consumers Coop. Inc. v. Associated Grocers of Harlem, Inc.,* 408 F.Supp. 1251, 1283 (S.D.N.Y.1976).

Francis M. Allegra, Tax Div., Dept. of Justice, Washington, D.C. (Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup, David English Carmack, Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before OAKES, MESKILL and MAHONEY, Circuit Judges.

MESKILL, Circuit Judge:

This appeal is from an August 12, 1985, judgment of the United States Tax Court, Peterson, Special Trial Judge, which granted partial summary judgment to the appellee, Commissioner of Internal Revenue, holding that appellants, Clarence K. Howe and Margaret C. Howe, had improperly deducted $42,620.02 for a claimed advanced minimum royalty payment. Thereafter, the parties stipulated to a settlement of the remaining issues in the case and a final order was entered July 1, 1986. We affirm.

## BACKGROUND

Appellants, accrual basis taxpayers, claimed a loss of $42,620.02 on their joint tax return for 1977. The loss was composed of $42,075.34 in advanced minimum royalties and associated expenses of $544.68. Appellants attribute their claimed deduction to their participation in an unsuccessful coal mining venture, the Plaza Coal Program (Program). The Commissioner denied the deduction in its entirety.

The Program was a joint venture formed to develop and commercially exploit coal-bearing deposits in Pennsylvania. The tax court found the following facts: On December 15, 1977, appellants entered into a sublease agreement with Fairchild Coal Corporation (the sublessor of certain rights to mine coal) for the right to mine coal for a period of eleven and one-half years unless the sublease was terminated sooner. Appellants agreed to pay Fairchild a *pro rata* share of a royalty for the right to mine coal based on the number of tons of coal mined, removed and sold and on the price at which such coal was sold.

Appellants also agreed to pay a *pro rata* share of a royalty, referred to as a "minimum annual royalty," of $177,650 for eleven and one-half years with $1,598,850 (the first nine years of minimum payment) being due immediately. The $1,598,850, characterized as an "advanced minimum royalty," was to be paid simultaneously with the execution of the sublease by all of the investors in the Program as follows: (1) non-recourse notes in the aggregate amount of $1,292,000, and (2) cash in the aggregate amount of $306,850. Appellants purchased one-half of one investment unit resulting in their obligation to pay $11,000 cash and a $34,000 non-recourse note to Fairchild. The minimum payments for the tenth and succeeding years were to be paid on December 31 of each such year. The minimum payments described above were to offset and reduce the regular tonnage royalty of $5.50 per ton for the first 32,300 tons of coal mined, removed and sold for each year during the first ten years of the sublease. The minimum payments for the tenth and succeeding years were to be reduced by the tonnage royalty payable during each such year of the sublease.

The non-recourse notes used to satisfy the minimum royalty obligation bore an interest rate of six percent and were payable thirty days after the end of each month beginning December 31, 1977, in an amount equal to $5.65 multiplied by the number of tons of coal up to 1,700 tons mined and removed during the year, in proportion to the debtor's share of the sublease. To the extent the payments described above made during the year totaled an amount less than a minimum amount specified in the note, the difference was due and payable on December 1 of the year in which the shortfall occurred. The note set out the minimum payments for owners of one investment unit as follows:

| | |
|---|---|
| 1978 | 4,000 |
| 1979 | 8,000 |
| 1980 | 8,000 |
| 1981 | 8,000 |
| 1982 | 8,000 |
| 1983 | 8,000 |
| 1984 | 8,000 |
| 1985 | 8,000 |
| 1986 | 8,000 |

Any unpaid principal or accrued interest was due on December 31, 1986, or upon

earlier termination of the borrower's sublease.

Upon default of either the note or the royalty obligation, Fairchild Coal Corporation could look only to the collateral described in the sublease for payment. The collateral was limited to (1) the coal and other rights granted under the sublease; (2) improvements, buildings, structures, equipment, machinery and other personal property of the sublessees used in connection with the operations under the sublease; and (3) any proceeds from property described in (1) and (2).

*Decision Below*

The tax court, relying on its decision in *Maddrix v. C.I.R.*, 83 T.C. 613 (1984), *aff'd*, 780 F.2d 946 (11th Cir.1986), concluded that the non-recourse nature of appellants' obligations under the note rendered the obligations dependent on the production of coal. The tax court wrote: "A nonrecourse note on which the only periodic payments are contingent on production does not satisfy the provision in the regulation that the agreement of the parties requires annual uniform payments over the life of the lease." *Howe v. C.I.R.*, 50 T.C.M. (CCH) 689, 692 (1985). The court thereupon granted the Commissioner's motion for summary judgment as to the non-deductibility of appellants' payments under Treas. Reg. § 1.612–3(b)(3).

## DISCUSSION

A. *Deductibility Under Treas.Reg. § 1.612–3(b)(3)*

■ The regulation requires (1) substantially uniform (2) annual payments (3) for the life of the lease (4) without regard to actual coal production in order to claim a deduction as an "advanced minimum royalty."[1] *See Maddrix,* 780 F.2d at 950; *Ward v. C.I.R.*, 784 F.2d 1424, 1427 (9th Cir.1986). The precise issue on appeal is whether appellants' obligations under the non-recourse note satisfy the payment requirements of the regulation. Mere "possibilities of payment are insufficient to satisfy Treas.Reg. 1.612–3(b)(3)." *Brown v. C.I.R.*, 799 F.2d 27, 31 (2d Cir.1986).

■ Recently, in *Brown,* we considered an investment plan similar to the appellants' plan for purposes of determining deductibility under Treas.Reg. § 1.612–3(b)(3). The tax court decision we reviewed in *Brown* rested on the same analysis employed by the tax court in this case, *i.e.,* that the non-recourse nature of a taxpayer's obligation, secured only by the taxpayer's interest in a coal mining venture, automatically prevented deductibility under Treas.Reg. § 1.612–3(b)(3). *Id.* at 30. In *Brown* we rejected this analysis and wrote:

an analysis which focuses solely on the nature of the note and the security that guarantees its payment without examining more does not appear consistent with footnote 33 [*Wing v. C.I.R.*, 81 T.C. 17, 41 n. 33 (1983)]. It is not enough simply to say that because the note is non-recourse, any yearly payment is not required. Rather, the inquiry in this limited area should be whether the failure to make a specified annual payment can result in the loss of all lease rights within the one-year period.

*Id.*

Appellants, however, urge us to reconsider *Brown* in order to permit them to dem-

---

**1.** Section 1.612–3(b)(3) provides in pertinent part:

(3) The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e., when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount.

26 C.F.R. § 1.612–3(b)(3) (1986).

onstrate that, at the time they entered the Program, they *intended* to honor their obligations under the non-recourse promissory note. Appellants would have us displace *Brown*'s one year forfeiture of interest test with a subjective intent test for purposes of satisfying Treas.Reg. § 1.612–3(b)(3). We decline to do so. "This court is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc.*" *United States v. Ianniello*, 808 F.2d 184, 190 (2d Cir.1986). Moreover, *Brown*'s objective standard for determining whether a non-recourse obligation is illusory or genuine offers a workable, common sense approach in this extremely fragile area of the tax law. We will continue to follow the rule in *Brown.*

The sublease provisions governing appellants' payment obligations are set forth in the margin.[2] Paragraph 10(b) provides that appellants' annual obligations pursuant to the non-recourse promissory note could not be enforced in less than one year and three months after each payment became due. The sublease as a whole makes clear that these promissory note payments are the only payments that might fairly be characterized as substantially uniform and periodic for purposes of satisfying Treas. Reg. § 1.612–3(b)(3). *See Brown*, 799 F.2d at 30–31 (interpreting similar sublease agreement). Paragraph 10(a), which authorizes enforcement of appellants' obligations after only six months, applies only to the lump sum payment due at the inception of the Program and the remaining payments in years ten and eleven. These payments, given the sublease's various provisions for setoffs and staggered payment, are neither substantially uniform nor periodic.

Paragraph 10(b), therefore, is the focus of our analysis. It governs the only payments which might arguably fall within the requirements of the regulation. Paragraph 10(b), however, permits appellants to withhold their payments without penalty of forfeiture for over a year. The appellants' obligations, therefore, fail the *Brown* test.

**B.** *Appellants' Accrual Basis Challenge*

Appellants contend that Treas. Reg. § 1.612–3(b)(3) is invalid as applied to them because they are accrual method taxpayers. Under the accrual method, receipts and disbursements ordinarily are allocated to the accounting period in which the receipts are earned and the liabilities incurred, regardless of the time of receipt or payment. 2 J. Mertens, *Law of Federal Taxation*, § 12.01 (Rev.1986). Under this method, an expense is deductible for the taxable year in which all of the events have occurred that determine the fact and amount of the liability. Treas.Reg. § 1.461–1(a)(2). Appellants complain that the regulation's requirement of actual payment impermissibly contravenes their right to accrue their liabilities for tax purposes without actually paying the liability.

The actual payment requirement of the regulation is designed to create an incentive to undertake the mining of the coal by requiring yearly payments *without regard* to the amount of coal actually mined. *Ward*, 784 F.2d at 1429 & n. 7. The purpose is to create immediate liability in order to encourage coal production. *Id.* (citing *Wing*, 81 T.C. at 38 n. 30). Likewise, the test articulated in *Brown* focuses on the taxpayer's practical incentive to pay on an annual basis. *Brown*, 799 F.2d at 30–31. Absent this requirement of actual payment

2. The sublease provides in pertinent part:

10. *Events of Default.* The following shall constitute events of default as to any Sublessee hereunder and under the Notes:

(a) If any of Sublessees shall default in the payment of his respective pro rata share of any royalties and/or other monies required hereunder when the same shall become due and payable, and such default shall not have been remedied within ninety (90) days after written notice thereof shall have been received by such Sublessee from Sublessor, provided that with respect solely to the payment

of the Minimum Annual Royalty, such default shall not have been remedied within six months after such written notice.

(b) If any of Sublessees shall default in the payment of his respective Note for a period of twelve (12) months after the same shall be due and payable, whether at maturity or at a date fixed for payment or prepayment, and such default shall not have been remedied within three (3) months after written notice thereof shall have been received by such Sublessee from Sublessor.

J.App. at 75.

on an annual basis, the use of non-recourse notes would enable individuals to realize inflated deductions without actually having to make the underlying outlays.

Appellants' status as accrual method taxpayers does not alter this reality. The relevant focus is not a taxpayer's method of accounting; rather, it is the nature of a taxpayer's obligation to make the payments for which he claims deductions. *Compare* Rev.Ruling 80–70, 1980–1 Cum. Bull. 104 (accrual method taxpayer's obligations under negotiable promissory note payable on demand *satisfy* requirements of Treas.Reg. § 1.612–3(b)(3)) *with Brown*, 799 F.2d at 30–31 (accrual method taxpayer's obligations under non-recourse note, where forfeiture postponed for two years after default, *fail to satisfy* requirements of Treas.Reg. § 1.612–3(b)(3)). Although the regulation interferes with the appellants' ability to accrue their liabilities, this interference results from the illusory nature of their obligations under the non-recourse note. In this context, we conclude that the regulation properly balances the right to accrue liabilities on the one hand, and the need to provide an incentive to make the payments underlying the claimed deduction on the other.

The judgment of the tax court is affirmed.