**Charles J. HEITZMAN,**
**Petitioner–Appellant,**

v.

**COMMISSIONER OF the INTERNAL**
**REVENUE SERVICE,**
**Respondent–Appellee.**

No. 87–7181.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1987.
Decided Oct. 18, 1988.

---

Bruce I. Hochman, Martin Gelfand, Hochman, Salkin & DeRoy, Beverly Hills, Cal., for petitioner-appellant.

Michael C. Durney, Michael L. Paup, David English Carmack and Janet K. Jones, Tax Div., Dept. of Justice, Washington D.C., for respondent-appellee.

Before BROWNING, HUG, and REINHARDT, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Charles J. Heitzman, a limited partner in Stonehurst Energy Partners, both of whom operated under the accrual method of accounting for tax purposes, deducted his share of the partnership's obligation for advanced oil and gas royalties and for the costs of drilling oil and gas wells on his 1979 return. The Commissioner disallowed the deductions. The Tax Court upheld the Commissioner. We affirm.

## I.

On December 29, 1979, Stonehurst entered a sublease for land on which it planned to drill oil and gas wells. The sublease provided that Stonehurst's obligation to pay the first year's royalties would accrue on the execution of the sublease, and for the second and subsequent years on each anniversary of the execution date. If the wells produced oil or gas, the accrued royalties were to be paid out of earnings from production. Accrued royalties not satisfied out of production were to be paid by 1994. Heitzman personally assumed primary liability for payment of his share of the accrued royalties. No oil or gas was produced in 1979. Nonetheless, Stonehurst claimed the first year's accrued royalties as a deduction on its 1979 tax return. Heitzman claimed a pro-rata share of Stonehurst's deduction on his 1979 return.

■ Under Treasury Regulation § 1.612–3(b)(3), deduction of advanced royalties generally must be deferred until the year the mineral product to which they relate is sold or produced. Treas.Reg. (26

C.F.R.) § 1.612–3(b)(3).[1] They may be deducted in the year in which they are paid or accrued only if they result from a "minimum royalty provision" in the lease. *Id.* A minimum royalty provision must "require[ ] that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years...." *Id.*

Citing earlier rulings, the Tax Court held that a "minimum royalty provision" under the regulation "must require the payment of a substantially uniform amount of royalties at least annually. In other words, the provision cannot permit the deferral of payment of the minimum annual royalty. There must be an enforceable obligation to make a substantially uniform payment each year." (citations omitted). The Tax Court concluded the Commissioner properly disallowed Heitzman's deduction because the lease only required accrual, not payment, of a minimum royalty annually. Absent production, no actual payment was required until December 19, 1994—a period of 15 years.

The Tax Court rejected Heitzman's argument that it was enough to satisfy the regulation that Heitzman had assumed personal liability for his pro-rata share of the minimum advanced royalty payments required by the lease. The court noted that dictum supporting Heitzman's argument in

*Vastola v. Commissioner*, 84 T.C. 969, 979 (1985), was rejected in *Capek v. Commissioner*, 86 T.C. 14, 41 (1986), as inconsistent with the regulation. As the Tax Court said in *Capek*, "[e]ven assuming that the petitioners would eventually pay the notes, payment after the close of the taxable year does not satisfy the requirement of the regulation that the royalties 'be paid at least annually' over the term of the lease." 86 T.C. at 47. *See also Oneal v. Commissioner*, 84 T.C. 1235, 1241 (1985).

The Second Circuit has adopted the Tax Court's view that the regulation is not satisfied unless payment is required each year. *Brown v. Commissioner*, 799 F.2d 27, 30–31 (2d Cir.1986) (regulation not complied with where payment not compelled for two years); *Howe v. Commissioner*, 814 F.2d 98, 101–02 (2d Cir.1987) (regulation not satisfied where payment could be withheld for 15 months). We agree. While Heitzman's assumption of personal liability may have satisfied the requirement that the obligation to pay be real and not illusory, it did nothing to satisfy the further requirement that substantially uniform payments be made each year.[2]

The recognized purpose of the requirement of advanced minimum royalty payments is to provide the lessee with an in-

---

1. Treas.Reg. § 1.612–3(b)(3) provides in part:

The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e., when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over

the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount....

2. The Second Circuit held the test is not whether the note to be given as payment is recourse or non-recourse, but rather "whether the failure to make a specified annual payment can result in the loss of all lease rights within the one-year period." *Brown*, 799 F.2d at 30. That court noted with approval the Tax Court's analysis in a similar case.

We can discern no reason for petitioner's stating that $6,000 is to be paid each year for the life of the lease and then give a note due in the 10th year for those same amounts other than that petitioner did not want to be liable for payment during the term of the lease. Without such liability, there can be no enforceable requirement to pay, and hence, no minimum royalty provision.

*Id.* (quoting *Wing v. Commissioner*, 81 T.C. 17, 41 n. 35 (1983)).

centive for production under the lease.[3] A requirement that lessees make substantially uniform royalty payments annually is reasonably related to the accomplishment of that purpose.

Heitzman argues the word "paid" in the definition of "minimum royalty provision" should be read as if accompanied by the phrase "or accrued," as it is in other portions of the regulation; and if it is not, the regulation is an invalid infringement on the right of taxpayers to accrue payments for the use or possession of property. 26 U.S. C. § 162(a)(3), § 461, § 7701(a)(25).

The Commissioner's literal reading of the words of the regulation is consistent with its purpose.[4] The regulation does not bar accrual accounting. It simply conditions the deduction by an accrual taxpayer in a manner consistent with the purpose of the regulation.[5]

■ A regulation must be upheld if it "implements the congressional mandate in some reasonable manner." *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982), (internal quotation omitted). Deference to Treasury Regulations is particularly appropriate in the area of depletion, where the Supreme Court has recognized "the necessity of a broad rule-making delegation of authority ...: As Congress obviously could not foresee the multifarious circumstances which would involve questions of depletion,

it delegated to the Commissioner the duty of making the regulations." *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed. 2d 140 (1981) (internal quotations omitted). Although tying advance royalty deductions to actual cash outlays on an annual basis limits a taxpayer's opportunity to accrue obligations, the regulation was within the Secretary's broad authority to adopt reasonable rules to govern such deductions. 26 U.S.C. § 611. *See Howe*, 814 F.2d at 101–02.[6] *Compare United States v. Hughes Properties, Inc.*, 476 U.S. 593, 603, 106 S.Ct. 2092, 2098, 90 L.Ed.2d 569 (1986).

■ Finally, we reject Heitzman's contentions that the doctrine of "judicial estoppel" precludes the Commissioner from now taking the position that the regulation is not satisfied by accrual of royalty payments annually, because the Commissioner took an inconsistent position in a brief submitted to the Tax Court in *Wing v. Commissioner*, 81 T.C. 17 (1983). The Commissioner is not barred from changing his position on legal issues. *Dickman v. Commissioner*, 465 U.S. 330, 343, 104 S.Ct. 1086, 1093, 79 L.Ed.2d 343 (1984). Nothing more is involved here.

## II.

■ The second issue is whether Stonehurst, and in turn Heitzman, properly claimed deductions for intangible drilling costs in 1979.

---

3. *Howe*, 814 F.2d at 101; *Ward v. Commissioner*, 784 F.2d 1424, 1429 n. 7 (9th Cir.1986); *Wing v. Commissioner*, 81 T.C. 17, 38 n. 30 (1983).

   Heitzman argues that Revenue Ruling 77–489, 1977–1 C.B. 177, issued contemporaneously with the 1977 amendments to the regulation, suggests the purpose of the annual payment requirement was to prevent taxpayers from deducting lump sum advanced royalty payments in the first year of a lease. The two purposes are not mutually exclusive.

4. Language in other portions of the regulation suggest the deduction for royalty obligations is linked to payment, and not accrual, of the obligations. Treas.Reg. § 1.612–3(b)(1). ("[T]he payee shall compute cost depletion on the number of units *so paid for* in advance of extraction ... and shall treat the amount so determined as an allowable deduction for depletion from the gross income *of the year in which such payment or payments are made.*" (emphasis added)).

5. Even when the minimum royalty exception does not apply, a taxpayer's right to accrue advanced royalty obligations is limited. The first sentence of the regulations provides that advanced royalties not falling within a minimum royalty provision, whether paid or accrued, can be deducted only in the year the mineral product is sold or produced. Treas. Reg. § 1.612–3(b)(3).

6. In *Howe*, the incentive to maintain production was diminished because advanced royalties could be "paid" by a non-recourse note. In this case, the lessee's motivation to produce was lessened by permitting payment to be deferred. It was within the Secretary's authority to protect the incentive to produce from diminution by either means, as the regulation does.

An accrual method taxpayer may deduct expenses in the year in which they are incurred, regardless of when they are actually paid. 26 U.S.C. § 461. Expenses are not deemed "incurred," however, until all events that determine the fact of liability have occurred and their amount of the liability can be determined with reasonable accuracy (the "all events" test). Treas. Reg. § 1.461–1(a)(2).

Simultaneously with the execution of the sublease, Stonehurst entered into a "Turnkey Drilling Contract" for the drilling of 25 wells by June 30, 1980, at a price of $12,000 for each dry hole and $35,000 for each producing well. The contract stated that Stonehurst was "obligated in all events" to pay the drilling company $668,000—the cost of completing 16 producing wells and 9 dry holes. Stonehurst was to pay the $12,-000 dry hole cost for each well upon notice from the drilling company that drilling would begin within five days. The balance of the $35,000 cost of a completed well was to be paid if and when Stonehurst elected to complete the well. No notices were given and no wells were drilled in 1979. Nonetheless, Stonehurst claimed a $500,000 deduction for intangible drilling costs on its 1979 return.

Heitzman in turn deducted his pro-rata share of these costs on his 1979 return. Heitzman contends that all the events which established Stonehurst's liability for $668,000 expenses occurred when the drilling contract was executed. He bases his argument on the provision that Stonehurst "shall be obligated in all events to pay" this amount, and upon the fact Heitzman assumed a personal obligation to pay his share of these costs.

The Tax Court noted "from the agreement as a whole the conclusion is inescapable that Stonehurst had no liability for any drilling costs with respect to any well until notified that drilling would commence within five days." The Tax Court held "[s]ince Stonehurst did not receive any notice that drilling was to commence until March of 1980 it is apparent that all the events which determined its liability for any drilling costs did not occur until after the end of 1979. Consequently, no part of the drilling costs is accruable in 1979."

We agree with the Tax Court. Two recent Supreme Court cases illustrate application of the "all events" test when an accrual basis taxpayer seeks a current deduction of an obligation expected to be paid in future years on the ground that the taxpayer's liability to pay became fixed during the current tax year. In *United States v. Hughes Properties, Inc.*, 476 U.S. 593, 106 S.Ct. 2092, 90 L.Ed.2d 569 (1986), the Court allowed a casino to deduct the amount in the jackpot of a "progressive" slot machine at the close of the tax year because the casino was irrevocably committed by the State of Nevada to pay that amount to the winning player eventually. The size of the jackpot would continue to grow until the winning combination appeared, but the obligation to pay the amount reached at any given moment was fixed and irrevocable. Although the casino might go out of business or go into bankruptcy and the jackpot never be paid, "this potential nonpayment of an incurred liability exists for every business that uses an accrual method, and it does not prevent accrual. The existence of an absolute liability is necessary; absolute certainty that it will be discharged by payment is not." 476 U.S. at 606, 106 S.Ct. at 2099 (internal quotation omitted).

In *United States v. General Dynamics Corp.*, 481 U.S. 239, 107 S.Ct. 1732, 95 L.Ed.2d 226 (1987), the Court refused to allow an accrual basis employer providing medical benefits to its employees to deduct at the close of the year the amount the employer carried in a reserve account for the payment of the cost of medical services actually obtained by its employees late in the year but for which the employer had not yet received claims. The Court noted that the taxpayer was liable to pay for the medical services only if a properly documented claim was filed. The Court also noted that some employees "through oversight, procrastination, confusion over the coverage provided, or fear of disclosure to the employer of the extent or nature of the services received, might not file claims for reimbursement to which they are plainly entitled." *Id.* 107 S.Ct. at 1736. The Court concluded that "[m]ere receipt of services

for which, in some instances, claims will not be submitted does not, in our judgment, constitute the last link in the chain of events creating liability for purposes of the 'all events' test." *Id.* 107 S.Ct. at 1737. Since the filing of a claim necessary to create liability and the claims had not been filed in the tax year in question, the deduction was not allowed. The Court distinguished *Hughes* on the ground that failure to file a claim did not "represent the type of 'extremely remote and speculative possibility' that we held in *Hughes* did not render an otherwise fixed liability contingent." *Id.* 107 S.Ct. at 1736 (*quoting Hughes*, 476 U.S. at 601, 106 S.Ct. at 2097; citation omitted).

We think the present case is closer to *General Dynamics* than to *Hughes*. As the Tax Court held, Stonehurst, and therefore Heitzman, was not liable for drilling costs unless and until the drilling company gave notice of its intention to begin drilling a particular well. That event had not occurred at the close of the tax year. That it might not occur as to at least some of the wells cannot be characterized as an "extremely remote" possibility.[7]

AFFIRMED.

---

**7.** Neither *Stradlings Building Materials, Inc. v. Commissioner,* 76 T.C. 84 (1981), nor *Cheroff v. Commissioner,* ¶ 80,125 P–H Memo TC (1980) (Commissioner conceded both elements of "all events" test), upon which Heitzman relies, considered the application of the "all events test."