Warren WEIL and Maria Galuppo,
Plaintiffs–Appellees,
Cross–Appellants,

v.

RETIREMENT PLAN ADMINISTRATIVE COMMITTEE of the TERSON CO., INC., the Terson Co., Inc., the Northern Trust Co., as Trustees of the Terson Co., Inc. Salaried Retirement Plan, Defendants–Appellants, Cross–Appellees.

Nos. 1126, 1239, Dockets 89–9223, 89–9255.

United States Court of Appeals,
Second Circuit.

May 1, 1991.

Ellen S. Mendelson (Sidney Eagle, Mitchell Shenkman, Eagle & Fein, P.C., New York City, of counsel), for plaintiffs-appellees, cross-appellants.

Logan T. Johnston, Phoenix, Ariz. (Johnston, Maynard, Grant & Parker, Phoenix, Ariz., Richard W. Cutler, New York City,

of counsel), for defendants-appellants, cross-appellees.

Shirley D. Peterson, Asst. Atty. Gen. (Gary R. Allen, Richard Farber, Bruce R. Ellisen, Attorneys, Tax Div., Dept. of Justice, Washington, D.C., Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, of counsel), for U.S. as amicus curiae.

Before MESKILL, CARDAMONE and PIERCE, Circuit Judges.

## ON PETITION FOR REHEARING

PIERCE, Senior Circuit Judge:

We grant the petition for rehearing of plaintiffs Warren Weil and Maria Galuppo. In our prior opinion, 913 F.2d 1045 (2d Cir.1990) ("*Weil II*"), familiarity with which is assumed, we reversed the district court's judgment that a partial termination of the Retirement Plan for Salaried Employees of The Terson Company, Inc. ("Plan") had occurred under 26 U.S.C. § 411(d)(3) when 33.4% of the Plan participants were discharged from their jobs in 1981. We held that in determining whether a partial termination had occurred, the district court should have focused only on the terminated plan participants whose benefits had not vested and that the ratio of terminated non-vested participants over total plan participants yielded a percentage, 16.4%, which did not qualify as a significant percentage on the facts presented.

After plaintiffs filed a petition for rehearing, we invited the Internal Revenue Service ("IRS"), the agency responsible for administering the partial termination statute, to submit a brief as *amicus curiae* and requested that defendants respond. The IRS has informed us that it believes a partial termination may occur if there is "a significant contraction of a plan, such as a significant reduction in the number of plan participants" and "all terminated participants, both vested and non-vested, should

be counted in determining whether a partial termination has occurred." Brief for *Amicus* at 6. The IRS thus measures partial terminations using the ratio of terminated plan participants (vested and non-vested) over total plan participants. Furthermore, the IRS states that it has used this ratio in previous revenue rulings and that its long-standing position is expressly set forth in its Plan Termination Handbook contained in the Internal Revenue Manual, Ch. 252(7) (Apr. 20, 1990), *reprinted in* 4 Administration Internal Revenue Manual (CCH) at 21,151.[1] *Id.* at 8–9. Because serious questions as to the correctness of our holding have been raised, we believe it is necessary to reconsider how partial terminations should be measured.

When a court interprets a statute that has been construed by the administering agency, it must first ask:

> whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted); *accord Mead Corp. v. Tilley*, 490 U.S. 714, 722, 109 S.Ct. 2156, 2161–62, 104 L.Ed.2d 796 (1989). Moreover, " '[t]o uphold [the agency's interpretation] "we need not find that [its] construction is the only reasonable one, or

---

1. The Handbook was first brought to this Court's attention in plaintiffs' petition for rehearing. In their petition, plaintiffs also refer us to footnote two of a General Counsel Memorandum in which the "percentage reduction in [plan] participation" was measured "by dividing the total participant terminations during the plan year by the sum of the employee-participants at the beginning of the plan year plus the participants added during the plan year." Gen. Couns.Mem. 39344 (Oct. 16, 1984).

even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." ... We need only conclude that it is *a* reasonable interpretation of the relevant provisions.' " *Aluminum Co. of Am. v. Central Lincoln Peoples' Util. Dist.*, 467 U.S. 380, 389, 104 S.Ct. 2472, 2479, 81 L.Ed.2d 301 (1984) (emphasis in original) (quoting *American Paper Inst., Inc. v. American Elec. Power Serv. Corp.*, 461 U.S. 402, 422–23, 103 S.Ct. 1921, 1932–33, 76 L.Ed.2d 22 (1983) (quoting *Unemployment Compensation Comm'n v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946))); *see Chevron*, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11; *see also Blum v. Bacon*, 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982) (interpretation of agency that administers statute is entitled to substantial deference).

The original provision governing terminations, 26 U.S.C. § 401(a)(7), was added to the Internal Revenue Code as part of the Self–Employed Individuals Tax Retirement Act of 1962, Pub.L. No. 792, § 2(2), 76 Stat. 809 (1962). As enacted in 1962, § 401(a)(7) provided in pertinent part: [2]

> A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that, upon its termination or upon complete discontinuance of contributions under the plan, the rights of all employees to benefits accrued to the date of such termination or discontinuance, to the extent then funded, or the amounts credited to the employees' accounts are nonforfeitable.

In its report on § 401(a)(7), the Committee on Ways and Means stated: "This new provision adds to the statute a requirement which has been in the Treasury regulations for many years.... [T]he bill precludes the possibility that contributions for employees which have been deducted for income-tax purposes may revert back to the employer.... This requirement should serve to prevent abuses resulting from termination of plans." H.R.Rep. No. 378,

87th Cong., 1st Sess., *reprinted in* 1962–3 C.B. 261, 269. Presumably, intending to achieve this goal on a much broader basis, Congress made § 401(a)(7) applicable to *all* retirement plans, including plans provided by corporations, not merely to those that covered owner-employees. *Id.* at 275–76; S.Rep. No. 992, 87th Cong., 1st Sess., *reprinted in* 1962–3 C.B. 303, 328.

When Congress enacted § 401(a)(7) in 1962, it apparently did not contemplate the concept of partial termination. Then in 1963, in a treasury regulation, the Secretary of the Treasury explicitly introduced the concept of partial termination by defining termination as used in § 401(a)(7) to include "both a partial termination and a complete termination of a plan." Tres.Reg. § 1.401–6(b)(2) (1963). Thereafter, § 401(a)(7) governed partial terminations.

Eleven years later, as part of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1988), Congress enacted 26 U.S.C. § 411(d)(3), which explicitly refers to partial termination, merely to restate then-existing § 401(a)(7) and to codify the definition of termination in Treasury Regulation § 1.401–6(b)(2). *Anderson v. Emergency Medicine Assocs.*, 860 F.2d 987, 991 (10th Cir.1988). The legislative history of § 411(d)(3) states: "[T]he rule of full immediate vesting is still to apply in the case of a termination, or partial termination of a plan." H.R.Conf.Rep. No. 1280, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin.News 5038, 5058; *see* S.Rep. No. 383, 93rd Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News 4890, 4935.

Section 411(d)(3), which is the subject of our particular concern herein, provides in relevant part:

> a trust shall not constitute a qualified trust under section 401(a) unless the plan of which such trust is a part provides that—

**2.** Section 401(a)(7) currently provides: "A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part satisfies the requirements of section 411 (relating to minimum vesting standards)." 26 U.S.C. § 401(a)(7) (1988).

(A) upon its termination or partial termination,

. . . . .

the rights of all affected employees to benefits accrued to the date of such termination, partial termination, or discontinuance, to the extent funded as of such date, or the amounts credited to the employees' accounts, are nonforfeitable.

Although Congress did not provide a definition of partial termination, the House and Senate Reports state that "[e]xamples of a partial termination might include, under certain circumstances, a large reduction in the work force, or a sizeable reduction in benefits under the plan." H.R.Rep. No. 807, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4670, 4731; S.Rep. No. 383, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4890, 4935. In addition, the corresponding Treasury Regulation provides in part:

Whether or not a partial termination of a qualified plan occurs (and the time of such event) shall be determined by the Commissioner with regard to all the facts and circumstances in a particular case. Such facts and circumstances include: the exclusion, by reason of a plan amendment or severance by the employer, of a group of employees who have previously been covered by the plan; and plan amendments which adversely affect the rights of employees to vest in benefits under the plan.

Treas.Reg. § 1.411(d)–2(b)(1) (1977).

In *Weil II*, we speculated that the primary congressional purpose of the partial termination statute was to protect the pension benefits of non-vested participants. 913 F.2d at 1050–51. It seemed logical to the district court and to us to consider only non-vested participants in a partial termination inquiry, since it was their rights to accrued benefits that were imperiled.

After further reflection upon the legislative history of the partial termination provisions, we are persuaded that the legislative intent behind § 411(d)(3) is ambiguous, and it is equally arguable that in enacting this section, Congress mainly intended to prevent employers from abusing pension plans to reap tax benefits. For example, the Third Circuit, in at least one case, has concluded that "[§ 411(d)(3)] is intended to prevent employers from maintaining pension plans for the purpose of deferring income, and thereby reducing their taxes, rather than for the purpose of providing retirement benefits for employees." *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 151 (3d Cir.1987), *aff'd in part and rev'd in part on other grounds*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In reaching that conclusion, the court reasoned that Congress pursued the goal of protecting employees from dismissals motivated by an employer's desire to avoid paying pension benefits in other sections of ERISA and that "[a]ttributing this goal to the partial termination provisions as well makes the partial termination provision seem both superfluous and clumsy." *Id.* The Third Circuit's analysis of the purpose of the partial termination provisions, however, has varied. *See Chait v. Bernstein*, 835 F.2d 1017, 1021 (3d Cir. 1987) (§ 411(d)(3) "defines termination for the purpose of vesting certain unvested employee benefits for workers who would otherwise be left out in the cold after a drastic and sudden change in the plan"); *Vornado, Inc. v. Trustees of the Retail Store Employees' Union Local 1262*, 829 F.2d 416, 418 n. 2 (3d Cir.1987) ("The statute's aim is to force employers to include language favorable to employees in the plan."); *United Steelworkers v. Harris & Sons Steel Co.*, 706 F.2d 1289, 1298 (3d Cir.1983) (discussing partial termination in terms of conditioning tax benefits upon employers' compliance with rules designed to benefit employees; "[r]ules governing the effect of a 'partial termination' in the tax sense serve the purpose of helping to ensure that employees will not be deprived of their anticipated benefits").

Based upon the conflicting interpretations by our sister circuit and upon our own reassessment as well, it appears to us that the legislative purpose behind § 411(d)(3) is far from clear. *See Vornado*, 829 F.2d at 418 n. 2 ("the purpose underlying

§ 411(d)(3) is not altogether obvious"); *Bruch,* 828 F.2d at 151 ("[I]t is not easy to divine the purpose of § 411(d)(3). Without a clear sense of the provision's purpose it is difficult to decide what should and should not constitute a partial termination. Clarification from Congress or the Internal Revenue Service as to the purpose of this provision would make it substantially easier to enforce."). Finally, we recognize that the statute itself is entirely silent regarding how a partial termination is to be measured.

Having concluded that the congressional purpose behind the partial termination statute is unclear and that the statute is silent regarding the measurement of a partial termination, we next consider whether the IRS' position is based on a permissible construction of § 411(d)(3). In our view, the IRS' interpretation of § 411(d)(3)—that a partial termination occurs when there is a significant contraction of the plan, and therefore, all terminated plan participants must be considered in a partial termination inquiry—is a reasonable construction in light of the examples provided in the House and Senate Reports ("a large reduction in the work force, or a sizeable reduction in benefits under the plan"). Those examples suggest that Congress regarded a partial termination to be a sudden and dramatic change in the plan as a whole. Moreover, the language used in the treasury regulations, which refers to the exclusion of employees who have been *covered* by a plan, additionally supports the IRS' position. We also find significance in the fact that no distinction was made between vested and non-vested plan participants in these sources. We therefore apply the ratio utilized by the IRS and, as the district court found, conclude that the Plan was partially terminated in 1981 when 33.4% of the Plan participants were discharged. Accordingly, we reinstate the district court's order that defendants purchase annuities sufficient to provide benefits to plaintiffs equivalent to the actuarial present value of their benefits and its award of attorneys' fees, costs and disbursements under 29 U.S.C. § 1132(g)(1) (1988), plus post-judgment interest.

In their answer to the petition for rehearing, defendants urge that the IRS is establishing a new rule that should be applied only prospectively. They argue that since they detrimentally relied on a 1981 determination letter—in which the IRS considered only non-vested participants in concluding that no partial termination had occurred during the years 1975–1980—the IRS' retroactive application of its "all-terminee analysis" would be an abuse of discretion. Even if the IRS has established a new rule, we are constrained to reject defendants' argument by *Dickman v. Commissioner,* 465 U.S. 330, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984). There, plaintiffs argued that the Commissioner's retroactive application of the changed interpretation of a tax law was manifestly unfair, since they detrimentally relied on the original, long-standing interpretation of the law in planning their financial affairs. The Court disagreed:

> Even accepting the notion that the Commissioner's present position represents a departure from prior administrative practice, which is by no means certain, it is well established that the Commissioner may change an earlier interpretation of the law, even if such a change is made retroactive in effect. *E.g., Dixon v. United States,* 381 U.S. 68, 72–75 [85 S.Ct. 1301, 1304–05, 14 L.Ed.2d 223] (1965); *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 183–184 [77 S.Ct. 707, 709–10, 1 L.Ed.2d 746] (1957). This rule applies even though a taxpayer may have relied to his detriment upon the Commissioner's prior position. *Dixon v. United States, supra* [381 U.S.] at 73 [85 S.Ct. at 1304]. The Commissioner is under no duty to assert a particular position as soon as the statute authorizes such an interpretation. *See also Bob Jones University v. United States,* 461 U.S. 574 [103 S.Ct. 2017, 76 L.Ed.2d 157] (1983).

*Id.* at 343, 104 S.Ct. at 1094 (footnotes omitted). Accordingly, it is our judgment that defendants' "detrimental reliance" argument is unavailing. *See id.; Commissioner v. Miller,* 914 F.2d 586, 591–92 (4th Cir.1990); *Cohen v. Commissioner,* 910

F.2d 422, 427–28 (7th Cir.1990); *Heitzman v. Commissioner,* 859 F.2d 783, 786 (9th Cir.1988); *Canton Police Benevolent Ass'n v. United States,* 844 F.2d 1231, 1236–38 (6th Cir.1988); *Consolidated Edison Co. v. United States,* 782 F.2d 322, 325 (2d Cir.1986) (per curiam); *Fogarty v. United States,* 780 F.2d 1005, 1011 (Fed. Cir.1986); *Becker v. Commissioner,* 751 F.2d 146, 150 (3d Cir.1984); *Yarbro v. Commissioner,* 737 F.2d 479, 483 (5th Cir. 1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985).

Defendants also contend that the plaintiffs failed to prove that the Plan was sufficiently funded at the time of the partial termination to provide benefits. We see no error in the district court's conclusion, based upon recommendations by the IRS, which the court sought with the consent of the parties, that the Plan was sufficiently funded at the time of the partial termination.

Finally, we conclude the district court did not abuse its discretion in any way regarding its award of attorneys' fees.

We have considered plaintiffs' and defendants' remaining arguments and find them to be without merit.

The petition for rehearing is granted. Parts III and IV of the prior opinion of this Court are vacated, and the judgment of the district court is affirmed.